[Civ. No. 3268.   Third Appellate District.—July 15, 1927.]

FRANK BORGNIS, Appellant, v. CALIFORNIA–OREGON POWER COMPANY (a Corporation), Respondent.

Preston & Duncan, Henry McGuinness, J. P. McNamara and Robert E. Hatch for Appellant.

Morrison, Dunne & Brobeck, Dunne, Brobeck, Phleger & Harrison, Dunne, Dunne & Cook, Taylor & Tebbe and H. V. Ley for Respondent.

FINCH, P. J.—This is an action to recover damages for personal injuries sustained by plaintiff when a steel fishing-rod, which he was carrying, came in contact with a sagging wire of the defendant's power line.  The jury returned a verdict in favor of defendant, and judgment was entered

accordingly. The plaintiff has appealed from the judgment.

The action is based upon the alleged negligence of the defendant in allowing the power wire to remain in such sagging condition. Respondent contends that the plaintiff was a mere licensee on the defendant's right of way, and that the judgment, therefore, must be affirmed; there being no proof or claim that the defendant wilfully or wantonly injured the plaintiff. Appellant contends that he was an invitee of the defendant, for whose safety the latter was bound to exercise ordinary care, commensurate with the dangerous character of the agency under its control.

The accident occurred while plaintiff was on a fishing trip along Shovel Creek, near Klamath Hot Springs, in Siskiyou County, on land owned by the Klamath Hot Springs Hotel Company. The company there owns about two thousand acres of land, through which Shovel Creek flows for about two and a half miles. "Fishing is one of the attractions of the place." No objection has been made "to the public coming in and fishing on this property." "The public has availed itself of the opportunity to fish in this stream on this property for the past five or six years. . . . Fishing was encouraged so far as guests were concerned." "There is lots of people from around the county here that goes up on Sundays that never patronize the hotel, that camp on the creek and along the river there. Of course, people coming from any distance, why, they usually stay at the hotel. Probably about seventy-five per cent of the fishermen are guests of the hotel and twenty-five per cent not guests." The plaintiff was not a guest at the hotel and had no business dealings there. He testified: "I did not stay at the hotel because I am camping outside every time when I go out. . . . I used to go up Shovel Creek several times each season. I always saw lots of people up there fishing. . . . I have seen lots of people fishing in this stream near the place where I was hurt at previous times. . . . Nobody told me I couldn't fish or forbade it on these premises. . . . You can fish all along the stream. . There are no fences. I did not stay at or take any meal at or have any business dealings at the hotel the time I was hurt."

The defendant has acquired a right of way seventy-five feet wide through the lands of the hotel company, and the power line in question was on and along this right of way. The grant of the right of way contained the following provision: ''The party of the second part agrees not to erect any adjoining fences along its right of way.''

The accident occurred during the afternoon of May 12, 1923. The defendant introduced evidence tending to show that shortly before 8 o'clock in the morning of the same day an insulator near the scene of the accident was struck by lightning and broken, thereby causing the wire attached to the insulator to drop to a point within eight and a half feet of the ground, and that the defendant was not negligent in failing to discover the sagging condition of the wire prior to the accident.

The defendant was in the lawful possession of the right of way upon which the accident occurred and, ''so far as the question of negligence is concerned, was clothed with the rights of the owner and must be treated as such.'' (*Lindholm* v. *Northwestern Pac. R. Co.*, 79 Cal. App. 34 [248 Pac. 1033]; *Waller* v. *Smith*, 116 Wash. 645 [200 Pac. 95].) The view most favorable to the plaintiff is to assume that the defendant was bound to exercise the same degree of care for his safety as the hotel company would have been required to exercise if it had owned and controlled. the power line on its own land. This assumption will be indulged throughout the discussion of the case. Respondent contends that it occupied a more favorable position than that so assumed.

Where one ''expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit.'' (Cooley on Torts, 3d ed., p. 1259.) On page 1265 of the same work it is said: ''One is not invited into danger when his entrance upon dangerous premises is simply not opposed and prevented. Thus, one whose unenclosed grounds people cross without objection is not liable to one who falls into an unguarded cistern there.'' An invitation to use the premises of another is inferred where there is a common interest

or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using them." (*Bush* v. *Weed Lumber Co.*, 63 Cal. App. 426, 432 [218 Pac. 618, 620].) "Mere permission, or a habit . . . of an owner of allowing people to enter and use a certain portion of his premises is indicative of a license merely, and not of an invitation." (*Herzog* v. *Hemphill*, 7 Cal. App. 116, 119 [93 Pac. 899].) "Simple permission does not make one an invitee. Permission and community of interest are necessary." (*Kinsman* v. *Barton & Co.*, 141 Wash. 311 [251 Pac. 563].) "To come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must be at least some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the object of the visit may not be for the benefit of the occupant." (*Plummer* v. *Dill*, 156 Mass. 426 [32 Am. St. Rep. 463, 31 N. E. 128]; *Coburn* v. *Village of Swanton*, 95 Vt. 320 [115 Atl. 153].) An implied invitation "arises in the case of customers who for the purpose of trade or other business enter a store, or other place of business, and in the case of persons attending public places of amusement, or other places where persons have paid for the privilege of being or placing their property." (29 Cyc. 455.) All are invitees who are expressly invited, regardless of any question of benefit or advantage to the inviter, even though the invitation be not individual, but to the public generally. (*Chafor* v. *City of Long Beach*, 174 Cal. 478 [Ann. Cas. 1918D, 106, L. R. A. 1917E, 685, 163 Pac. 670]; *Richmond & M. R. Co.* v. *Moore*, 94 Va. 493 [37 L. R. A. 258, 27 S. E. 70]; *Peckett* v. *Bergen Beach Co.*, 44 App. Div. 559 [60 N. Y. Supp. 966].) "Merchants invite the public to enter their stores to buy wares. It cannot be said that they invite the entrance of those who accompany them, but have no intention of purchasing; such persons are mere licensees." (*Fleckenstein* v. *Great Atlantic & Pacific Tea Co.*, 91 N. J. L. 145 [L. R. A. 1918C, 179, 102 Atl. 700].) In *Means* v. *Southern California Ry. Co.*, 144 Cal. 473, 477 [1 Ann. Cas. 206, 77 Pac. 1001], the plaintiff was injured while sitting in defendant's freight-house, waiting

to see a person about a matter in which the defendant had no interest. The evidence showed "that numerous persons, having no business to transact with the defendant company, had been, for years, permitted to be around and about such freight platform, and were not ordered away by the officers of defendant." The court said that the plaintiff "was not upon the premises by the invitation, express or implied, of the defendant, nor for any business purpose connected with defendant, nor in relation to any business for which the freight-house . . . was used. . . . As a mere licensee, the defendant owed him no legal duty, except that while upon the premises no wanton or willful injury should be inflicted upon him." In *Hafey* v. *Dwight Mfg. Co.* and *Hafey* v. *Turners Falls Power & Electric Co.*, 240 Mass. 155 [133 N. E. 107], the power company maintained a power line across the land of the manufacturing company, such land including a "large portion" of Caleb's island. The court said: "Caleb's island, including the part owned by the Dwight Manufacturing Company, had been used for many years for playing baseball and other games. . . . There was a well beaten path on the island and the evidence showed that the plaintiff's intestate was walking on this path when his fishing pole came in contact with the uninsulated wire which had been allowed to sag within 10 feet of the ground, thereby causing his death. In order to reach the island the plaintiff's intestate had to cross the Boston & Maine Railroad bridge on either side of which there was a sign which forbade trespassing. There was no evidence that any invitation, expressed or implied, was at any time given by either defendant to the plaintiff's intestate to go upon the land or use the premises for any purpose. . . . The mere fact that the owner of the land did not take active measures to prevent its use, in the way shown on this record, did not amount to an inducement or invitation to use the premises." It was held that the plaintiff's intestate was not an invitee of either company, but a mere licensee. Two facts were there proved which do not appear in this case: the injury occurred on a "well beaten path" and trespass signs were posted on either side of the railroad bridge. It does not appear whether such signs referred to the island or to the bridge. In *Douglas* v. *Bergland*, 216 Mich. 380 [20 A. L. R. 197, 185 N. W.

819], the plaintiff was injured while fishing from defendant's wharf or rollway. Plaintiff had fished from the same place for nine seasons. The court said: "The testimony shows that plaintiff, his wife, and others fished off these rollways. On one occasion defendant pointed out to plaintiff's wife where he thought she could catch a fish. We think this testimony established license at most, and did not establish that plaintiff was an invitee." The reason for holding that mere acquiescence in cases such as this does not imply an invitation is well stated in *Long* v. *Pacific Ry. & Nav. Co.*, 74 Or. 502 [L. R. A. 1915F, 1151, 144 Pac. 462, 145 Pac. 1068], where it is said: "The right of way of the defendant was used by residents of that vicinity as a walkway for foot travel. . . . It is a matter of common knowledge that such rights of way and the tracks are commonly used by foot passengers wherever they are more convenient than the ways constructed by public authorities. It goes without saying that such use is not desired or encouraged by the railway authorities, but merely suffered because of the difficulties of preventing it. Such use is never of any advantage to the transportation companies, . . . The deceased was a mere licensee." A trout stream is a valuable adjunct to a hotel or pleasure resort. "Fishing is one of the attractions of the place" here in question. Doubtless many guests are attracted to the hotel by the fact that "Shovel Creek is a good fishing ground." It certainly would be of no advantage to the hotel company for campers who do not patronize the hotel to deplete the stock of trout and thereby diminish or destroy one of the principal attractions of the place. "It goes without saying" that proprietors of pleasure resorts, through whose lands trout streams flow, do not desire or encourage fishing therein by persons who do not patronize the resort, but merely suffer it "because of the difficulties of preventing it," and there is nothing in this case to indicate that the hotel company desired or encouraged campers to occupy the premises or fish in the stream, but at most the evidence shows a mere passive acquiescence therein. A hotel or pleasure resort of the character here in question is not a "public place" in the broad sense, but in the sense only that it is open to such part of the public as patronize the place or seek to do so. Its implied invitation is no more extended to the

person who goes there for reasons merely personal to himself than is that of a store or other place of business. It is true that a hotel ordinarily owes to its guest's guest the same degree of care as to the guest himself, but for reasons which are wholly absent in this case. (*Goldstein* v. *Healy*, 187. Cal. 206, 210 [201 Pac. 462].) Appellant says: "There was a distinct benefit even if it was no more direct than advertising. Thus, should Mr. Borgnis, for instance, find the fishing good, he would naturally tell his friends about it; they would in turn patronize the resort, and consequently more people would visit the resort." The same line of reasoning might be applied to one who enters a store or other place of business for purposes having no relation to such business. In such a case there is no mutuality of interest. There is an implied invitation to prospective purchasers to enter places where goods are kept for sale, but the courts have never gone further than to hold this implied invitation broad enough to include one who "entered the store with a vague purpose of buying something if she saw anything she took a fancy to." (*MacDonough* v. *F. W. Woolworth Co.*, 91 N. J. L. 677 [103 Atl. 74].) The evidence in this case does not show that the plaintiff had even a vague purpose of patronizing the place. He was a mere licensee, as shown by the uncontradicted evidence and by his own testimony. Since this fact precludes a recovery, it would be idle to consider the alleged errors of which complaint is made and which have no bearing upon the question of whether the plaintiff was an invitee or a licensee.

The judgment is affirmed.

Glenn, J., *pro tem.*, and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 12, 1927, and the following opinion then rendered thereon:

THE COURT.—The petition for hearing herein is denied. In denying the same, however, we withhold our approval of that portion of the opinion of the district court of appeal wherein it is decided that the plaintiff herein was a mere licensee of the owner of the premises upon which the accident and the resulting injuries to him occurred, since whether the plaintiff was a licensee or an invitee upon said premises, it was for the jury to determine whether the defendant had failed to exercise the degree of care which the circumstances of the situation required. The jury upon the evidence in the case resolved that question in favor of the defendant. It follows that the judgment upon such verdict was properly affirmed.

Preston, J., being disqualified, did not participate herein.