[Civ. No. 5662. Third Appellate District.—April 22, 1937.]

JOSEPH L. FRATERS, Appellant, v. H. VINCENT KEELING, as Trustee in Bankruptcy, etc., et al., Respondents.

Taft & Spurr for Appellant.

Herbert V. Keeling, Charles Kasch, Lovett K. Fraser and Keith C. Eversole for Respondents.

PLUMMER, J.—The plaintiff appeals from a judgment of dismissal following the action of the trial court in sustaining demurrers to plaintiff's third amended complaint. The plaintiff was given leave to further amend his complaint, but declining to do so, judgment of dismissal followed in due course. The action is one for personal injuries suffered by the plaintiff when going upon the premises belonging to, and under the control of the defendants.

The appellant contends that at the time of the injury he occupied the status of an invitee in relation to the defendants. The defendants contend that at the time of the injuries sustained the plaintiff occupied only the status of a bare licensee.

The third amended complaint contains the following allegations:

"3.

"That at all the times hereinafter mentioned the defendants owned, maintained and conducted for profit to themselves, certain property in Lake County, California, known and described as Lot 'K' of the Subdivision known as the Town of Lucerne, and in connection therewith owned, maintained and conducted a wharf extending southerly from said real property into the waters of Clear Lake, a distance of approximately three hundred feet, and having a float connected with said wharf on the easterly side of the southerly end thereof,

for the purpose of providing golf, hunting, fishing, boating and bathing facilities, and the said defendants did by advertisement seek the patronage of the general public for such purposes on the aforesaid properties.

"4.

"That the aforesaid properties so owned, maintained and conducted by the said defendants, were, on the 20th day of April, 1935, and at the time of the injuries to the plaintiff hereinafter referred to in paragraph five hereof, in a defective and dangerous condition in the following particulars, to-wit: That said float had located within its exterior floor surface a hole in size sixteen inches by twenty-six inches, which at the time of the injuries to the plaintiff hereinafter referred to in paragraph five, was unknown to the plaintiff; that the easterly side of said float was water-logged and covered with water to a depth of about two inches, so that the said hole was obscured and was not marked by any signal or warning device whatsoever.

"6.

"That the plaintiff at about the hour of eleven o'clock A. M. on the 20th day of April, 1935, for the purpose of purchasing boating facilities, to-wit: gasoline for an outboard motor on a boat then and there being operated by him on the waters of Clear Lake in response to the aforesaid invitation to the general public as alleged in paragraph three hereof, came upon said float to do business with, and at the invitation of said defendants, and at said time and place, by reason of the defective, dangerous and obscured visibility of said hole in the said float, without warning signals of any kind whatsoever, and the plaintiff relying upon the apparent safety and covered surface of said float, fell into said hole in said float, breaking four ribs and injuring his left eye so that he became totally blind in his left eye."

These paragraphs show that the plaintiff went upon the premises described for the purpose of purchasing gasoline. There is no allegation in the complaint that the plaintiff knew or even thought that the defendants were engaged in the business of selling gasoline. It would appear from the complaint that the plaintiff tied his boat to the float mentioned in the allegations so that he might obtain gasoline wherever the same could be purchased. The third paragraph which we have quoted shows that the invitation to the public did not include any invitation to the public to come and purchase

gasoline. The invitation, as alleged, was confined to proving facilities for golfing, hunting, fishing, boating and bathing. The invitation is thus clearly shown not to include the sale of any articles of any kind whatsoever, and especialy, not the conducting of a filling-station for the purpose of supplying gasoline to intending purchasers. The furnishing of facilities for the purposes mentioned does not include the item of sales.

In 25 C. J. 334, "facilities" are thus defined: "Applied to carriers everything necessary for the convenience of passengers and the safety and prompt transportation of freight; everything incident to the general, prompt, safe, and impartial performance of the duties to the public at large imposed by the state, in the proper exercise of its police power, upon transportation or transmission companies. As applied to a ferry franchise, everything incident to the general, prompt, and safe carriage of passengers, boats in good repair, appliances answering the purpose and readiness and willingness to perform the services incident to the grant."

The law relating to licensees and invitees has been very fully considered in the following cases, to wit: *Borgnis* v. *California-Oregon Power Co.*, 84 Cal. App. 465 [258 Pac. 394], and *Aguilar* v. *Riverdale Cooperative Creamery Assn.*, 104 Cal. App. 263 [285 Pac. 889]. In both of the foregoing cases the facts set forth upon the trials thereof were held to establish the status only of a licensee. Here, the facts are shown by the pleadings. The plaintiff by his own allegations establishes the fact that he went upon the float mentioned in the complaint not for any purpose embraced within the alleged invitation extended by the defendants through their advertisements, or otherwise, but went upon the float for a distinct and different purpose. Whether the plaintiff thought or did not think that he could purchase gasoline from the defendants is immaterial, as he was going there upon what the complaint shows to be his own separate and distinct business.

The demurrers interposed by the defendants are both general and special. The special demurrer as well as the general would go to the point that the complaint fails to state a cause of action in that it does not allege that the defendants were engaged in the business which caused the plaintiff to tie his boat up at the float, and also, that the complaint is uncertain in showing from whom the plaintiff intended or hoped to buy gasoline.

The complaint alleges the business of the defendants, and then clearly establishes, as we have said, that he tied up to the float mentioned in the complaint and entered upon the same upon a mission not connected with the alleged business of the respondents. This, of course, limits the liability of the defendants to refrain from any wanton, wilful or intentional injury.

Instead of entering into a discussion of what constitutes relation of licensee and invitee, we quote from the case of *Aguilar* v. *Riverdale Cooperative Creamery Assn., supra,* the following, which clearly differentiates the two relationships, to wit: "Whether a person entering the premises of another bears the legal status of an invitee or of a bare licensee depends upon the nature of the business which brings him on the premises, and before such person can be given the legal standing of an invitee it must appear that he has entered the premises at the express or implied invitation of the owner or occupant thereof. If it be shown that his purpose in so entering was one of common interest or mutual benefit to the owner or occupant and himself, or was in connection with the former's business which was there being carried on, an invitation is implied. But if it be shown that he stood in no contractual relationship with the owner or occupant, and that he was there for purposes purely of his own or of a third party which had no relation whatever to the business of the owner or occupant, and in which the latter had no interest, beneficial or otherwise, he is deemed in law to be a bare licensee." This quotation is supported by a long list of authorities to which, for brevity's sake, we simply refer without copying the same herein.

In the Borgnis case, *supra,* several pages of the opinion are given, illustrating the facts attendant upon the status of a licensee, and also of an invitee, to which we likewise refer without lengthening this opinion by quoting therefrom.

Having pleaded the facts establishing the plaintiff's status as a licensee, and not showing any acts on the part of the defendants which would charge any liability to the plaintiff while occupying such status, it follows that the trial court committed no error in sustaining the demurrers interposed to the plaintiff's complaint.

The judgment is affirmed.

Held, J., *pro tem.,* and Thompson, Acting P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 21, 1937.