EDGAR BERNARDINE, Plaintiff, *v.* CITY OF NEW YORK, Defendant.

Supreme Court, Trial Term, Bronx County, November 24, 1943.

*James R. Lyttle* for plaintiff.

*Ignatius M. Wilkinson, Corporation Counsel (Robert J. Keegan, Jr.,* of counsel), for defendant.

BERNSTEIN, J. The plaintiff brought this action to recover damages for personal injuries suffered by him in attempting to stop a City-owned runaway horse that had thrown its rider, a mounted policeman duly engaged in the discharge of police duty. While the trial developed some disputes upon the issues of negligence, freedom from contributory negligence and assumption of risk, the question of the City's liability primarily rests upon the validity of its claim of governmental immunity.

The common-law rule which formerly afforded to municipalities a complete defense against tort liability has, in response to a rising tide of criticism against the doctrine of sovereign irresponsibility, been modified from time to time. (*Miller* v. *Town of Irondequoit,* 243 App. Div. 240, 241, affd. 268 N. Y. 578.) Sections 50-a and 50-b of the General Municipal Law (formerly Highway Law, § 282-g) removed the defense with respect to the liability of the municipality for negligence committed by its employees in the operation of a municipally-owned vehicle. Having created a liability in derogation of the common law, those statutes were necessarily construed strictly and narrowly, and the removal of the defense was limited to actions resulting only from the negligent operation of a vehicle. (*Berger* v. *City of New York,* 260 App. Div. 402, affd. 285 N. Y. 723.) An attempt to extend this waiver of immunity by judicial fiat so as to include the negligent manipulation of a municipally-owned horse was consequently doomed to fail. (*Douglas* v. *City of New York,* 266 App. Div. 717.)

In 1941, section 50-b of the General Municipal Law, which theretofore imposed liability upon a municipality for the negligence of its employees " in the operation of a municipally owned vehicle ", was amended by the addition of the words *" or other facility of transportation "*. (L. 1941, ch. 852, eff. April 28, 1941.) (Italics supplied.) The plaintiff predicates the City's liability in the case upon those added words. He can only succeed on the issue if the effect of the amendment was to extend the statutory waiver of immunity to negligence resulting from the manipulation or movement of a City-owned horse. The burden of establishing such extension rests upon him.

Governmental immunity admits of no exception other than that which the Legislature has enacted. It is not taken away by legislation that is not specific in its meaning. (*Matter of*

*Hoople,* 179 N. Y. 308, 311; *Lacock* v. *City of Schenectady,* 224 App. Div. 512, 515, affd. 251 N. Y. 575.) In construing statutes designed for the removal of such immunity courts will never go beyond their clearly expressed provisions. (Sutherland on Statutory Construction [1st ed.] par. 371; *Leppard* v. *O'Brien,* 225 App. Div. 162, 164, affd. 252 N. Y. 563; *Miller* v. *Town of Irondequoit,* 243 App. Div. 240, 242, *supra.*) Not without painful distortion of plain and simple language, therefore, can a horse be stabled within the shelter of the statute under consideration.

The phrase " other facility of transportation " is, like the word " vehicle," the object of the verb " operate." One may operate a mechanical device or other inanimate object. (*Morrow* v. *Asher,* 55 F. 2d 365, 367; *Witherstine* v. *Employers' Liability Assur. Corp.,* 235 N. Y. 168; *Wallace* v. *Smith,* 238 App. Div. 599.) One may not operate a horse, which is an animal, i. e., " Any animate being which is not human, endowed with the power of voluntary motion." (Bouvier's Law Dictionary [Rawles 3d Rev.] p. 195.) A facility, moreover, as applied to transportation, includes only what is necessary or incidental to the safe carriage of passengers and the transmission of freight. (*Commonwealth* v. *Sturtevant,* 182 Penn. St. 323; *Fraters* v. *Keeling,* 20 Cal. App. 2d 490). It not only embraces a train and a car but a depot, a garage, a waiting room, a freight shed, an elevator, an escalator and every other aid to vehicular traffic (*Little Rock & Ft. S. R. Co.* v. *Oppenheimer,* 64 Ark. 271; *Nekoosa-Edwards P. Co.* v. *Minneapolis, etc., R. Co.,* 217 Wis. 426). The word, in this connection, ordinarily includes inanimate means rather than human agencies. (*Sloss-Sheffield Steel & Iron Co.* v. *Smith,* 185 Ala. 607). To say that the Legislature intended to apply it to a horse is to strain its ordinary meaning and to violate recognized rules of construction.

That the Legislature did not intend to so apply it is apparent from a consideration of the historical background of earlier attempts to amend the original statutes. As Mr. Justice HOLMES once observed, " a page of history is worth a volume of logic." (*New York Trust Co.* v. *Eisner,* 256 U. S. 345, 349.) In 1940, the pertinent portion of section 50-c of the General Municipal Law was proposed to be amended to cover municipal liability for " negligent operation *or use* of certain vehicles *or animals* " in the performance of duty by policemen and firemen. (S. Pr. No. 678, Int. No. 646; A. Pr. No. 1031, Int. No. 1009.) (Italics in original.) The Senate bill passed both houses, but was reconsidered by the Assembly and recommitted to its Committee

on Rules. The Assembly bill was ordered stricken from the calendar. Neither of the bills ever reappeared or was acted upon. The Legislature of 1941, with full knowledge of the proceedings of 1940, substituted bills which provided for the amendment under consideration here; and they were duly enacted into law. It thus abandoned and rejected the earlier proposal to extend the waiver of immunity to the *use of animals,* and its action must be regarded as indicative of a clear intention not to so extend it.

In that view of the scope and meaning of the amended statute, the court is constrained to grant the defendant's motion to dismiss the complaint on the merits without considering or passing upon the other disputed issues, and judgment is directed accordingly. The plaintiff may have an appropriate exception, thirty days' stay of execution and sixty days to make a case.