# SMITH v. CRESCENT AMUSEMENT CO.—184 S. W. (2d) 179.

Middle Section.   July 22, 1944.

Petition for Certiorari denied by Supreme Court, December 15, 1944.

Jack Keefe, David M. Keeble, and Walker & Hooker, all of Nashville, for plaintiff in error.

Armistead, Waller, Davis & Lansden, of Nashville, for defendant in error.

HOWELL, J. This is a damage suit for personal injuries received in a fall in the Princess Theatre in Nashville, which building is owned by the defendant, The Crescent Amusement Company.

At the close of the plaintiff's proof the trial Judge granted a motion of the defendant to peremptorily instruct the jury to find in its favor and dismiss the suit. After proper procedure the plaintiff has appealed in error to this Court and has assigned this action of the trial Judge as error.

The facts are that the building occupied by the Princess Theatre and owned by the defendant was permitted to be used on the day of the accident by certain Nashville churches for the purpose of holding a revival meeting, the services to begin at 12:05 P. M. and to last until 12:35 P. M. each day for a period of two weeks. The owner had no connection with these services except to furnish free of charge the theatre in which they were to be held and also to furnish the heat and light. The plaintiff with a friend went to the theatre for the purpose of attending one of these services on February 28, 1941. They went in through the main entrance to the theatre and proceeded South along a passageway or lobby and then turned to their right and down a stairway that led to the

main auditorium. Before starting down the steps one of these ladies asked two men, who were standing near, where the services were to be held and were told to go down the steps. At the bottom of the main flight of steps was a platform from which it was necessary to turn to their left and step down two more steps to get on the main floor of the auditorium. The plaintiff when asked to tell what then happened said:

"A. We turned and went down those steps to our left and there was no light there and I noticed as we went down it was darker and darker and first, in my mind, I thought there was a curtain across there and I thought when we got down to this place we would go through a curtain and, of course, thinking I would find a light there but there was no light.

.   .   .   .

"A. Well, I was gliding my foot along, watching this place very carefully and when I got on down where it wasn't so dark—I was very careful to see when I would get to the main floor, and when I glided my foot along there didn't seem to be any other step, and I took, I don't know, possibly two steps or maybe three steps and I don't know whether my foot went over the landing—I' didn't step down. I don't know whether there was a step there. My foot went over the landing and just creened, just like that (indicating), and I knew I was gone, and I just crumpled on the floor and I heard the bones crushing as I fell and I flopped—"

On cross-examination the plaintiff said:

"Q. Now, I believe you stated that you had not been in the Princess Theatre, that you had not attended anything there for about fourteen years prior to February 28th, 1941? A. Yes sir.

"Q. And you were going down those steps there and it was so dark you couldn't see where you were going and gliding your foot along or feeling slowly along? A. Going very carefully down, gliding my foot.

"Q. Now then, on which side were you going down of the aisle? Were you next to the railing you spoke of being on the left there or were you over on the other side? A. I must have been right in the middle of the steps. I was not holding.

"The Court said: You said going down the aisle.

"By Mr. Armistead: Q. Those steps lead to the platform from the main entrance to the auditorium? A. This friend of mine was between me and the railing. She might have been holding the railing; I was not."

The witness Mrs. Margaret Myers, who was with the plaintiff, testified in part as follows:

"Q. Now, go ahead, Mrs. Myers, in your own way and tell his Honor and the jury just what happened. A. We started down the stairs and it was quite dark. I was holding to the bannister and Mrs. Smith was on my right and it was awfully dark when we got to the bottom and I remember seeing a very small light which, I imagine, must have been on the stage, I don't know, just one small light but the dome light was not on. It was awful dark and I thought we were to the floor level and when Mrs. Smith fell I was just in the act of taking the same step she did. She just beat me to it.

"Q. I will ask you, to get this clear, you entered the Princess Theatre, of course, from Church Street, is that true? A. That is true.

"Q. And you walked on back down a lobby for some seventy-five or more feet, is that true? A. Yes sir.

"Q. And then there are some steps that lead off to the right or to the west, is that true, that lead downstairs? A. Yes sir.

"Q. And those are the steps that you were directed to go down, you and Mrs. Smith? A. Yes sir.

"Q. Now, it is shown that there are fifteen or sixteen of those steps leading from the second floor, the top floor, down to the first floor or where the auditorium is, as I will put it, of the theatre or the first floor, is that true? A. That is true.

"Q. And then down at the bottom of those fifteen or sixteen steps there is a landing or platform, is that true? A. That is true.

"Q. Then as one goes down those steps you are headed generally west? A. Yes.

"Q. And as you go into the lobby of the theatre do you turn to the left, which would be to the south, or to the right, which would be the north?

"The Court: Go into the lobby of the theatre?

"By Mr. Walker: Q. Go into the auditorium of the theatre? A. We could turn to the—

"Q. Can you turn either way? A. That is right. I saw lights to my left way down front.

"Q. That is where the stage is, to your left? A. Yes sir.

"Q. And that is where all the seats are, to your left, when you go in—that is, it would be to your left when you reach the platform? A. Yes sir.

"Q. You said something about a dome light. Was there a light there, I mean a bulb there above that platform? Is that the dome light you have reference to? A. That is the dome light they turned on after she fell.

"Q. But that was right there at the time Mrs. Smith

fell or was that another light? A. No, there was no light whatsoever.''

The record does not disclose that the defendant received any compensation or benefit whatever for permitting the churches to use the theatre auditorium for these services. R. L. Parham, the manager of the Princess Theatre who testified for the plaintiff, said in part as follows:

''Q. Now, it is true, is it not, Mr. Parham, that in 1941, the month of February and before that time that people at any kind of gathering like a show or services of any kind that they would gather and have seats some few minutes, fifteen minutes or more, before services actually started, is that not true? A. Well, sometimes they come up in the lobby and sit down until they see the lights on and when the ushers from the church come in they usually take care of that. We don't have anything to do with the ushers or the filling of the theatre except to turn on the lights and furnish heat.

''Q. Furnish a place to sit and turn on the lights? A. That is right.

''Q. And I believe you stated that was fifteen minutes before they were due to start? A. Yes sir.

''Q. And to furnish heat, and the theatre was doing that, that is, the Princess Theatre of the Crescent Amusement Company, is that not true? A. Yes sir.

''Q. And that was just exactly what was the situation with reference to the arrangement and what was supposed to be done on February 28th, 1941? A. Yes sir.''

Two questions are presented by this record: Was the plaintiff guilty of such contributory negligence as would prevent her recovery as a matter of law? And, was the defendant guilty of such negligence as makes it liable to the plaintiff in damages for the injuries received?

In the case of Loew's Nashville & Knoxville Corporation v. Durrett, 18 Tenn. App. 489, at pages 503 and 505, 79 S. W. (2d) 598, at page 606, Faw, P. J., said:

"The attention of plaintiff Mrs. Durrett was forcibly drawn to the absence of an usher to attend her and also to the darkness of the aisle, and she knew and appreciated the fact that there was danger that she would fall if she attempted to descend the steps in the darkness. She was not a child, or a mentally infirm person, but an intelligent woman of mature years, accustomed to visiting moving picture shows.

. . . .

"And so, we think that, according to the undisputed testimony of the plaintiff Mrs. Durrett, she assumed the risk of a known danger and was, as a matter of law, guilty of contributory negligence which proximately contributed to her injuries, and that the trial court should have sustained the defendant's motion for a directed verdict at the first trial."

We are of the opinion that the plaintiff, a lady of mature years, in deliberately walking down these steps in the dark, before the lights had been turned on, without holding to the railing, knew or should have known of the danger and assumed the risk and was guilty of contributory negligence in law which proximately contributed to her injuries and that she cannot recover.

In Bejack v. Colby, 141 Tenn. 686, 693, 214 S. W. 869, 871, it was held: "If the plaintiff was guilty of negligence which directly and proximately contributed to bring about the injury, it would make no difference whether that negligence was slight or gross, he could not recover."

Negligence and contributory negligence in this case are subject to the general rule on motions for directed verdict. Merriman v. Coca Cola Bottling Company, 17 Tenn.

App. 433, 68 S. W. (2d) 149; Gargaro v. Kroger Grocery & Baking Company, 22 Tenn. App. 70, 118 S. W. (2d) 561; Nashville Bridge Company v. Hudgins, 23 Tenn. App. 677, 137 S. W. (2d) 327.

In Hicks v. Herbert, 173 Tenn. 1, 113 S. W. (2d) 1197, 1199, plaintiff had ridden in an automobile with a drunken driver. The trial court directed a verdict in favor of defendant. In sustaining that action the Supreme Court said:

"We think the record discloses a case in which it appears 'that reasonable men, acting as the triers of the fact, would find, without any reasonable probability of differing in their views, either that the plaintiff knew and appreciated the danger, or that ordinarily prudent men, under the same circumstances, would readily acquire such knowledge and appreciation.' See Stevens v. United Gas, etc., Co., 73 N. H. 159, 60 A. 848, 850, 70 L. R. A. 119; Gentzkow v. Portland R. Co., 54 Or. 114, 102 P. 614, 135 Am. St. Rep. 821.

"Such being the plight of the record, the trial judge did not err in holding as a matter of law that plaintiff was guilty of contributory negligence barring his recovery."

As to the question of negligence of the defendant, we are of the opinion that under the facts of this case the plaintiff was merely a licensee and that the defendant was not guilty of any negligence as a matter of law upon which a verict for the plaintiff could be based.

In Vol. 38, American Jurisprudence, paragraph 104, on page 765 it is said:

"Generally: Active Negligence.—A licensee is broadly defined as a person who enters upon the property of another for his own convenience, pleasure, or benefit. In order to constitute the person so entering a licensee,

his entrance upon the property of another must be pursuant to the license or implied permission of the owner. Such permission is frequently conferred by law in specific cases, as well as by acts of the owner of the property or of the person in charge of it.

"Mere licensees are about the least favored in law of men who are not actual wrongdoers. It has been stated that an owner or occupant owes one who he permits to enter for the latter's convenience no duty except not to harm him wilfully or wantonly, or to set traps for him, or to expose him to danger recklessly or wantonly."

While there are a number of Tennessee cases dealing with the subject of licensees and invitees, we find none directly in point with this case. The defendant here had allowed the churches to use the theatre free of charge, attendance at the services was free and by advertisements of the meetings published by the churches, the public was invited. It is too remote to say that the defendant received some benefit because of goodwill that may have resulted from its conduct even if it appeared that the public had been advised that the churches were not paying any rent and that defendant was donating the use of its building. This, however, does not appear.

There are a number of cases from other jurisdictions in which the subject is discussed.

In the Texas case of Kruse v. Houston & T. C. R. Co., Tex. Civ. App., reported in 253 S. W. 623, at page 625, the Court said:

"In Street on Personal Injuries, sec. 153, the rule is thus stated:

" 'Persons entering for their own pleasure or advantage on the premises of another by the permission, express or implied, of the owner or occupier, are licensees. They take the premises as they find them; a mere naked

license imposes no duty on the owner or occupier to provide against danger or accidents growing out of the unsafe condition of the premises.'

"This general rule is universally recognized by the authorities. [Galveston] Oil Co. v. Morton, 70 Tex. 400, 7 S. W. 756, 8 Am. St. Rep. 611; Kirby Lumber Co. v. Gresham, Tex. Civ. App., 151 S. W. 847

"The only difficulty in the application of the rule is to determine from the facts of a particular case whether the person injured upon the premises of another was upon the premises as an invitee or was merely a licensee. In determining this question the general test is whether the injured person, at the time of the injury, had present business relations with the owner of the premises which would render his presence of mutual aid to both, or whether his presence on the premises was for his own convenience, or on business with others than the owner of the premises. In the absence of some relation which inures to the mutual benefit of the two or to that of the owner, no invitation can be implied, and the injured person must be regarded as a mere licensee.

"In the case of Bennett v. [Louisville, etc.], Railway Co., 102 U. S. 577, 26 L. Ed. 235, the Supreme Court of the United States, speaking through Justice Harlan, says:

" 'It is sometimes difficult to determine whether the circumstances make a case of invitation in the technical sense of that word, as used in a large number of adjudged cases, or only a case of mere license. "The principle," says Mr. Campbell, in his Treatise on Negligence, "appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it." ' "

In the Arkansas case of Knight v. Farmers & Merchant's Gin Co., reported in 252 S. W. 30, at page 32 the Court said:

"It is not always clear, under a given state of facts, as to what inference may be drawn as to a person being a licensee or an invitee; but one of the sure tests is whether or not the owner of the premises is interested in the presence of the visitor."

In the case of Buckeye Cotton Oil Co. v. Campagna, 146 Tenn. 389, 242 S. W. 646, the Supreme Court held that city firemen going outside the City at the request of an owner to extinguish a fire are invitees and not licensees and said on page 393 of 146 Tenn., at page 647 of 242 S. W.:

"When firemen or policemen in the course of their duties go upon the premises of an individual, the latter owes no duty to them, except to refrain from inflicting upon them a willful or wanton injury. Under such circumstances, within the limits of the municipality by which they are employed, firemen and policemen are authorized by law to go upon the premises of any one in the discharge of their duties. The owner cannot prevent their entry, nor can he control their actions while they are there. They are accordingly mere licensees. Burroughs, etc., Co. v. Fryar, 132 Tenn. 612, 179 S. W. 127, L. R. A. 1916B, 791. The firemen in this case, however, came to the premises of the plaintiff in error upon its request. They were not obligated to go there, nor did they have any right to enter these premises. They were in theory of law subject to control of plaintiff in error while they were there. The reason of the rule just above stated, therefore, fails in this case, and we think the rule has no application. The firemen will accordingly be treated as invitees."

We are therefore of the opinion that there is no error in the action of the trial Judge in granting the motion of the defendant and dismissing the case. The assignments of error are overruled and the judgment of the Circuit Court affirmed. The plaintiff in error and her surety on the appeal bond will pay the costs.

Affirmed.

Felts and Hickerson, JJ., concur.