SMITH et al.

v.

UNITED STATES et al.

Civ. No. 31305.

United States District Court, N. D. California, S. D.

Oct. 26, 1953.

Edward A. Martin, Robert M. Rigney, Kilbourne & Test, Berkeley, Cal., for plaintiffs.

Lloyd H. Burke, U. S. Atty., Frederick J. Woelflen, Asst. U. S. Atty., San Francisco, Cal., for defendants.

HAMLIN, District Judge.

The plaintiff Robert L. Smith, a boy of 15, was camping with relatives in the Arroyo Seco camp grounds when he was injured by a falling limb of a tree on or about July 5, 1951. The Arroyo Seco camp area is owned by the United States and is a part of the Los Padres National Forest located in Monterey County, California. The Arroyo Seco camp area contains about 25 campsites. Campers are permitted to take their pick of the available campsites, but are not permitted to camp out of the specified camping area. In the campsite area, water and stoves and benches are provided. Plaintiff was sleeping in one of these campsites in a sleeping bag when a limb of a tree fell upon him, seriously injuring his leg. The limb was approximately 8 to 10 inches in diameter and 6 to 8 feet long. He brought this suit against the government for damages. Alice J. Tilley, mother of the plaintiff, also sued for damages and loss of services.

The duty owed the plaintiff by the United States is to be determined by the law of California. 28 U.S.C. § 1346(b). Under the law of California the plaintiff was an invitee.

"In determining whether a particular person is a business visitor (or invitee) of a possessor of land, the important thing is the desire or willingness to receive that person which a reasonable man would understand as expressed by the words or other conduct of the possessor. * * *. The nature of the use to which the possessor puts his land is often sufficient to express to the reasonable understanding of the public or classes or members thereof a willingness or unwillingness to receive them." Restatement of Torts, § 332(b).

■ California follows the rule that a person on the land of another is an invitee if the owner or occupant held out an invitation or allurement which led the visitor to believe that the use made by him of the premises was in accordance with intention and design. Barker v. Southern Pacific Co., 1931, 118 Cal.App. 748, 5 P.2d 970, rehearing denied, 1931, 118 Cal.App. 748, 6 P.2d 982.

The cases cited by the defendant that use language implying that some financial benefit to the possessor must be found before a visitor is an invitee all deal with situations which are distinguishable. These cases state that the visitor must be on the land of the possessor on some financial business with the owner, or that there must be some contractual relationship between the parties in order for the visitor to be an invitee. Popejoy v. Hannon, 1951, 37 Cal. 2d 159, 231 P.2d 484; Aguilar v. Riverdale Cooperative Creamery Ass'n, 1930, 104 Cal.App. 263, 285 P. 889; Fraters v. Keeling, 1937, 20 Cal.App.2d 490, 67 P.2d 118, hearing denied by Supreme Court.

■ However, in these cases there was no express invitation to enter upon the land and the visitor was not putting the land to the use for which it was normally intended. In such instances the Court looked to the purpose of the visit to see if an invitation was implied. If an invitation was implied by the purpose for which the visitor went upon the land, the visitor would be an invitee. An implied invitation is found where the purpose of the visit is for the mutual benefit of the parties. But "all are invitees who are expressly invited, regardless of any question of benefit or advantage to the inviter, even though the invitation be not individual, but to the public generally." Borgnis v. California Oregon Power Co., 1927, 84 Cal. App. 465, 258 P. 394, 395, hearing denied by Supreme Court.

■ The evidence shows that there was an express invitation to the public to use these campsites. A booklet is-sued by the Forest Service of the Department of Agriculture says "Public Use of National Forests is Invited." This booklet contains a history and description of the Los Padres National Forest, is in general circulation, and expressly lists Arroyo Seco as one of the public camps. The evidence also shows that the uses to which the campsites were put by the plaintiff were in accord with their design and purpose.

■ The evidence would also indicate that there was an implied invitation to use the campsite area. The setting aside of particular campsites for the use of the public, providing the use of stoves and benches in each campsite, the bringing of water to each campsite, the maintenance of a road to the campsites, and the supervision of campsites by the rangers, all would support the conclusion that the public was invited to use the campsites that had been prepared for public use.

The defendant cites the case of Lem v. United States, D.C.1950, 89 F.Supp. 915, where it was held that a visitor to a national park who stepped off a sidewalk to pass others and was injured while off the sidewalk was a licensee and not an invitee. This case is distinguishable because here the plaintiff was in the campsite at a place set aside for the purposes to which he was putting it.

■ The duty of care owed an invitee was described as follows by the California Supreme Court: "An owner owes no duty to * * * an invitee to keep his premises in a condition of absolute safety and is not bound to discover defects which reasonable inspection would not disclose. (Cases cited.) But he is required to have a superior knowledge of dangers which would not be obvious to the (invitee) if such dangers are discoverable in the exercise of due care." Mondine v. Sarlin, 1938, 11 Cal.2d 593, 81 P.2d 903, 904. See the Restatement of Torts, § 344.

■ The government appears to have recognized that it had a duty to the persons visiting the campsites. Mr. Bra-

den, the forest ranger in charge of this particular camp, testified that among his duties was the duty to inspect the campsite for any dangers or hazards that might be present and to remove such hazards. He further testified that he made an inspection in the campsite area for dead snags, dead limbs, or anything that might be a hazard, so that they could be eliminated "as soon as we can." Mr. Campbell, District Ranger for this area, testified to the same effect.

The limb that fell on the plaintiff fell on a calm day when there was little if any wind. All the plaintiff's witnesses testified that the limb was visibly rotten. Pictures taken of the limb nine days after the accident show that at that time it had no twigs and no foliage on it. There was no evidence that any strain had been put on the tree, yet Dr. Wagner who testified for the defendant concerning the pathology of trees, said that it would take a substantial strain to pull down a live tree. He also said, on being shown a portion of the tree which plaintiff's witnesses testified fell on the plaintiff, that such portion was in an advanced stage of decay and that visible decay is a slow process taking many months. Mr. Braden and Mr. Campbell inspected this campsite about one month prior to the accident. They both testified that at that time they saw no dead trees in the campsite where plaintiff was injured. Some dead trees were removed, but none of these was in the campsite itself. Braden further testified that he inspected the area three times a week.

Under the evidence it would appear that the defendant's employees were under a duty of ordinary care to eliminate dangerous conditions in the campsite area. The testimony of these employees indicated that they recognized that duty and purported to perform it. It further appears that by reason of their experience they were in a position to have superior knowledge of the conditions and they either failed to use ordinary care in ascertaining the dangerous condition of the campsite area or failed to use ordinary care in removing such dangerous condition.

The injuries to the plaintiff were substantial, and some of them permanent. The doctor described them as a crushing laceration of the left foot ten inches long and a severe laceration of the lower right leg, the latter being eighteen inches in length. The muscle in the right leg has been sheared off. There will be a permanent, visible scar and a permanent lessening of the circumference of the right leg due to loss of muscle tissue. There will also be permanent loss of strength in the right leg. The evidence discloses that plaintiff Alice J. Tilley, mother of the plaintiff Robert Smith, was required to and did expend $827.94 for medical and hospital expense resulting from the accident.

Judgment should be against the defendant and in favor of the plaintiff Alice J. Tilley in the sum of $827.94, and in favor of plaintiff Robert L. Smith in the sum of $5,000.

Findings of fact and conclusions of law to be presented by plaintiff pursuant to the rules.