**BARRETT v. FALTICO et ux.**
No. 1053.

United States District Court
E. D. Washington, N. D.
Dec. 16, 1953.

Snyder & Thomas, Spokane, Wash., Sidney E. Smith, J. Ward Arney, Coeur d'Alene, Idaho, for plaintiff.

Graves, Kizer & Graves, Spokane, Wash., for defendants.

DRIVER, District Judge.

█ The claim asserted by plaintiff's amended complaint is for damages for personal injury. Defendants, a marital community, have moved for summary judgment. The motion presents the question whether defendants are entitled to judgment as a matter of law on undisputed facts, shown by the record as it now stands. The record consists of the pleadings, the defendants' affidavits, plaintiff's counter-affidavit, and plaintiff's deposition.[1]

Summarized briefly, the undisputed record facts are as follows:

During the late summer and early fall of 1950, defendants, as promoters and operators, staged automobile races on an inclosed, circular race track at State Line Village, in northern Idaho. The place had the usual grandstand near the track for the accommodation of spectators. Rodeo shows also were sometimes held there; and, below the level of the grandstand and between it and the track, there were a number of narrow chutes, inclosed by high fences and gates, through which the mounted rodeo riders passed and from which they emerged for their performances. There was no fence or barrier between the chutes and the track. On the night of September 5, 1950, shortly before 10:30 o'clock, plaintiff, who, temporarily, was living in the village, entered the race track inclosure through the main gate. The races had been going on for some time, and the gate was open and unattended. He entered without the knowledge or express consent of defendants and without paying any admission fee. He walked over to the first rodeo chute, north of the main gate, and climbed up on it in a position to watch the races. He sat on one of the side gates and put his feet across on the other gate. After plaintiff had been in the "arena" what he estimated to be fifteen or twenty minutes and on the chute five or ten minutes, a tire on one of the racing cars blew out, causing the vehicle to skid off the track and strike the chute on which he was sitting. He did not see the car until it struck the chute. The force of the impact caused him to fall to the ground. He suffered a fractured left leg, the injury which is the basis of his claim.

Plaintiff had attended the automobile races at the State Line Village track on two prior occasions that same season. One time he paid admission and sat in the stands, and, on the other occasion, he sat on one of the rodeo chutes. He had witnessed two or three incidents which he would not say were "wrecks," but, rather, what he described in his deposition as "through the fence, or slide off the track, or a breakdown." Later on, in the same deposition, he testified that he saw cars that "had smashed into the south side of the grandstand; that is, the bleacher seats on the south side," after they had come around a curve. No one had instructed or requested plaintiff to sit on the chutes. He sat there of his own "free will," because he didn't think he had time or wanted to take the time to see many races, but "wanted to go right back." He was not aware that it was dangerous to sit on the chutes and did not give it a thought. There is no evidence in the record of plaintiff's age at the time of his injury, but it does appear that he was, to say the least, fully matured. He had been a bartender for thirteen years; and, before that, he had worked for several years as a policeman, fireman, and salesman.

In his amended complaint, plaintiff alleges that defendants were negligent in failing to maintain a barrier of reasonably sufficient strength properly to protect spectators of the races and, in failing to maintain or provide any warning as to the hazardous risks attendant

1. Fed.Rules Civ.Proc. rule 56(c), 28 U.S.C.A.

upon their business, fully known to the defendants. In order to determine whether defendants were chargeable with negligence, as alleged, it is necessary first to consider what was their duty of care to plaintiff, which, in turn, depends upon the legal relationship existing between plaintiff and defendants. He claims that he was an invitee and that defendants, as proprietors of a place of public amusement, owed him the duty of exercising ordinary care to maintain the premises in a reasonably safe condition, commensurate with the nature and hazards of the business conducted thereon.[2] Defendants, on the other hand, contend that plaintiff was either a trespasser or a licensee and, therefore, they owed him no duty other than to refrain from willfully or wantonly injuring him.[3]

I have in mind the well-established general rule that, in a tort action, the law of the place where the wrong has been committed is the substantive law that governs the rights and duties of the parties and determines whether or not the act or omission complained of gives rise to a civil liability for tort. 15 C.J.S., Conflict of Laws, § 12, page 897. In the instant case, the alleged wrong was committed in the State of Idaho; but counsel on neither side have cited any Idaho case, and my own independent research has produced only one, Pincock v. McCoy, just cited in the margin, in footnote 3, which I regard as sufficiently analogous to be helpful. The oral argument of counsel on both sides dealt almost exclusively with Washington law. I shall follow counsel's lead to the extent of stressing that law in this Opinion. I feel justified in doing so, because I regard the Washington cases which I shall discuss as sound, well-reasoned, and in accord with the weight of authority.

In Schock v. Ringling Brothers, cited in footnote 3, Judge Steinert, the writer of the Court's Opinion, with his usual thoroughness and clarity, defined the three relationships, now under consideration, as follows [5 Wash.2d 599, 105 P.2d 841]:

"An invitee is one who is either expressly or impliedly invited onto the premises of another for some purpose connected with the business in which the owner or occupant of the premises is then engaged, or which he permits to be conducted thereon; and to establish such relationship, there must be some real or supposed mutuality of interest in the subject to which the visitor's business or purpose relates. * * [Citing authorities.]

"A licensee occupies an intermediate position between that of an invitee and that of a trespasser. He is one who goes upon the premises of another, either without any invitation, express or implied, or else for some purpose not connected with the business conducted on the land, but goes, nevertheless, with the permission or at the toleration of the owner. * * * [Citing authorities.][4]

"A trespasser is one who enters the premises of another without invitation or permission, express or implied, but goes, rather for his own purposes or convenience, and

2. Olsen v. John Hamrick's Tacoma Theatres, 9 Wash.2d 380, 115 P.2d 718; Griffin v. Cascade Theatres Corp., 10 Wash. 2d 574, 117 P.2d 651. See also Notes, 22 A.L.R. 610, 670; 29 A.L.R. 29, 33; 98 A.L.R. 557, 577.

3. Garner v. Pacific Coast Coal Co., 3 Wash.2d 143, 100 P.2d 32; Schock v. Ringling Brothers, 5 Wash.2d 599, 105 P.2d 838; Pincock v. McCoy, 48 Idaho 227, 281 P. 371; Fernandez v. Consolidated Fisheries, 98 Cal.App.2d 91, 219 P.

2d 73; Nichols v. Consolidated Dairies of Lake County, 125 Mont. 460, 239 P.2d 7·10, 28 A.L.R.2d 1216.

4. For definition and differentiation of invitee and licensee, see also: Pincock v. McCoy, 48 Idaho 227, 281 P. 371; Sills v. Forbes, 33 Cal.App.2d 219, 91 P.2d 246, 248; Hickman v. First National Bank of Great Falls, 112 Mont. 398, 117 P.2d 275; Porter v. Thompson, 74 Cal. App.2d 474, 169 P.2d 40, 42; Demmer v. City of Eureka, 78 Cal.App.2d 708, 178 P.2d 472, 474.

not in the performance of a duty to the owner or one in possession of the premises. [Citing authorities.]" [5]

■ In the present case, the plaintiff would seem, at best, to be no more than a mere licensee. He had no express invitation to enter defendants' premises. If the open, unattended entrance gate be taken as a tacit invitation to the public to come in and see the remainder of the show, free of charge, the invitation reasonably could not be considered as broader than the privileges accorded paying patrons, namely, to occupy the stands or other places provided for the accommodation of spectators. Obviously, it could not be regarded as a blanket invitation to the public to stand or sit anywhere within the race track inclosure. If, therefore, it be assumed that plaintiff had an implied invitation to enter, the invitation was a limited one, and plaintiff did not keep within its limitations. A person who is invited to use only part of another's premises, or to use the premises for a limited, special purpose, becomes a mere licensee if he goes upon other parts to which he is not invited, or uses the premises for some unauthorized purpose of his own.[6]

Plaintiff's situation did not measure up to the requirements of the invitee relationship for another reason. The essential element of mutuality of interest was lacking. Plaintiff entered the race track seeking entertainment for his own pleasure. Defendants derived no profit or benefit therefrom. Plaintiff contends that he was, in effect, invited, along with the general public, to a free performance in order to advertise defendants' business and to solicit future patronage. The contention is not factually supported by the record, except for such inferences as may be drawn from the circumstance that the main gate was open and unattended at the time plaintiff entered.

No case has come to my attention in which it has been held that possible benefit to the proprietor, or occupant, in the form of good will alone, is sufficient to supply the element of mutuality of interest. On the other hand, in Schock v. Ringling Brothers, cited in footnote 3, where three children suffered personal injuries when they, along with numerous other persons, were watching a circus unload its equipment and paraphernalia in a railroad yard, which the railroad company had placed at the disposal of the circus for that purpose, it was held that the children were only licensees and could not recover for their injuries. Good will and advertising benefits to the circus apparently were not considered by the Court.

In Smith v. Crescent Amusement Co., 27 Tenn.App. 632, 184 S.W.2d 179, 182, the owner of a theatre permitted certain churches to use its building for religious revival meetings, free of charge. The meetings were open to the public, without admission fee. It was held that a person who entered the theatre to attend one of the meetings was a licensee, and the owner's duty of care toward him was limited to refraining from the infliction of willful or wanton injury. The Court commented on the "good will" factor in that case as follows: "It is too remote to say that the defendant [theatre owner] received some benefit because of good will that may have resulted from its conduct * * *."

■ It is my conclusion that plaintiff was a licensee. As such, he is not entitled to recover on his asserted claim, since there is no evidence in the record that the defendants willfully or wantonly injured him.

5. See also: Barry v. Southern Pacific Co., 64 Ariz. 116, 166 P.2d 825, 828; In re Wimmer's Estate, 111 Utah 444, 182 P. 2d 119; Restatement of the Law of Torts, Vol. II, p. 891, sec. 329.

6. Goldberger v. Market Street Ry. Co., 130 Cal.App. 597, 20 P.2d 351; Napier v. First Congregational Church of Portland, 157 Or. 110, 70 P.2d 43; Bird v. Clover Leaf-Harris Dairy, 102 Utah 330, 125 P.2d 797; Demmer v. City of Eureka, 78 Cal.App.2d 708, 178 P.2d 472; Sheridan v. Ravn, 91 Cal.App.2d 112, 204 P.2d 644.

But, even if it be assumed that plaintiff was an invitee, I think the motion for summary judgment should be granted. The hazards of automobile racing to an onlooker, who places himself in a position near the track, without the protection of any intervening barrier, are unmistakably clear and obvious. It is difficult to imagine a normal, adult person so naïve as to be unaware that automobiles in competitive races attain dangerously high speeds and that, on small, circular tracks, they are very likely to get out of control and out of bounds. Plaintiff may be assumed to have known the danger of the position in which he placed himself, as he not only was an adult person, but on two, prior occasions, had attended the races at the same track and had seen cars leave the track and crash against the spectator stands.

■ The duty of an owner or occupant to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, or pitfalls, in that they are unknown to the invitee and would not be observed by him in the exercise of ordinary care. ʹThe owner or occupant is not required to reconstruct or alter the premises so as to eliminate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or reasonably apparent, or such as should have been observed in the exercise of ordinary care.[7]

The foregoing principles have been applied by the Courts to invitee patrons in baseball parks.[8] Baseball is somewhat hazardous to spectators although, perhaps, in lesser degree than automobile racing. In Kavafian v. Seattle Baseball Club (cited in footnote 8), the Washington Supreme Court held that a paying patron, who attended a baseball game and elected to sit in an unscreened portion of the grandstand, although seats were vacant and available to him in the screened portion of the stand, could not recover damages from the baseball club for injuries which he sustained when he was struck by a foul ball. The patron had been a frequent spectator at baseball games and was familiar with the manner in which they were conducted. Familiarity with the game did not appear to have been a controlling factor, however, as it was not present in Leek v. Tacoma Baseball Club, Inc. (cited in footnote 8), an action for damages for personal injuries by a spectator at a baseball game. There, the patron had never been in the particular park before. He had played baseball as a boy and had seen games infrequently since that time. On the occasion of his injury, when he entered the park, an usher directed him to a seat in the grandstand behind home plate and behind a vertical screen 26 feet high. The grandstand was not roofed, and there was no screen overhead. He did not look to see if there was any overhead protection, but assumed that there was such protection. A short time after he had been seated, a batter hit a high foul, which traveled up over the screen and down into the grandstand. It struck the spectator on the head, inflicting the injuries for which he brought suit against the baseball club operating the ball park. The Court held that the spectator could not recover.

In Brown v. San Francisco Ball Club (also cited in the margin, in footnote

---

7. Caron v. Grays Harbor County, 18 Wash.2d 397, 139 P.2d 626, 148 A.L.R. 626; 65 C.J.S., Negligence, § 50, page 541; 38 Am.Jur. 757, Negligence, 97; See also: Walsh v. West Coast Coal Mines, Inc., 31 Wash.2d 396, 197 P.2d 233; Blodgett v. B. H. Dyas Co., 4 Cal. 2d 511, 50 P.2d 801; Fraters v. Keeling, 20 Cal.App.2d 490, 67 P.2d 118; Hill v. Eaton & Smith, 65 Cal.App.2d 11, 149 P. 2d 762; King v. Griffith Co., 65 Cal.App. 2d 114, 150 P.2d 8; City of Tulsa v. Harman, 148 Okl. 117, 299 P. 462.

8. Kavafian v. Seattle Baseball Club, 105 Wash. 215, 177 P. 776, rehearing en banc, 105 Wash. 219, 181 P. 679; Leek v. Tacoma Baseball Club, Inc., 38 Wash.2d 362, 229 P.2d 329; Wells v. Minneapolis Baseball & Athletic Ass'n, 122 Minn. 327, 142 N.W. 706, 46 L.R.A.,N.S., 606; Brisson v. Minneapolis Baseball & Athletic Ass'n, 185 Minn. 507, 240 N.W. 903; Brown v. San Francisco Ball Club, 99 Cal.App.2d 484, 222 P.2d 19.

8), it was held that a patron was not entitled to damages for injuries sustained while she was watching the game, although she had very little knowledge of the game of baseball.

In the instant case, it seems clear to me that even though plaintiff be regarded as an invitee, he is precluded from recovery for the reasons stated above.

Defendants' motion for summary judgment will be granted.