# IN THE SUPREME COURT OF CALIFORNIA

MIKAYLA HOFFMANN,
Plaintiff and Appellant,

v.

CHRISTINA M. YOUNG et al.,
Defendants and Respondents.

S266003

Second Appellate District, Division Six
B292539

San Luis Obispo County Superior Court
16CVP0060

August 29, 2022

Justice Corrigan authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Liu, Jenkins, and Guerrero concurred.

Justice Kruger filed a concurring opinion, in which Justices Liu and Groban concurred.

HOFFMANN v. YOUNG

S266003

Opinion of the Court by Corrigan, J.

Under Civil Code section 846, landowners generally owe no duty of care to keep their property safe for others who may enter or use it for recreational purposes.[1] There is an exception to that statutory negation of duty, however, when a landowner expressly invites someone onto the property. The question here is whether that exception applies when the invitation is extended, not by the landowners, but by their live-at-home child who acts without the owners' knowledge or permission. The trial court ruled that the exception did not apply because there was no evidence the landowners personally invited the plaintiff to come onto their land. The Court of Appeal reversed, holding that an invitation by a landowner's live-at-home child operates to activate the exception unless the child has been prohibited from making the invitation. (*Hoffmann v. Young* (2020) 56 Cal.App.5th 1021,1024 (*Hoffmann*).) Neither court interpreted the statute correctly. Here, we hold that a plaintiff may rely on the exception and impose liability if there is a showing that a landowner, or an agent acting on his or her behalf, extended an express invitation to come onto the property. Plaintiff did not meet that burden below. We reverse the Court of Appeal's judgment and remand the matter as explained.

---

[1] All undesignated statutory references are to the Civil Code.

## I.    BACKGROUND

Defendants Donald and Christina Young lived with their sons, Gunner and Dillon,[2] on property they owned in Paso Robles.  Donald also designed and built a motocross track on the land.

One day in 2014, 18-year-old Gunner invited Mikayla Hoffmann (plaintiff) to go motorcycle riding.  The next day, he drove plaintiff and her bike to his parents' property, unloaded the motorcycle, and provided her with protective riding gear.[3]  He told her to ride on the driveway while he took a "warm-up" lap on the track.  Instead, plaintiff entered the track and rode in the opposite direction from Gunner.  Their bikes collided, and both were injured.[4]

Plaintiff sued Donald, Christina, Gunner, Dillon, and a business owned by Donald.  She asserted claims for (1) negligence, (2) premises liability based on negligent track design, and (3) negligent provision of medical care.

---

[2]    To avoid confusion and repetition, we refer to the Youngs by their given names.

[3]    There was no dispute that Gunner invited plaintiff onto his parents' property.  The parties disagreed as to whether the invitation was to ride *on the motocross track*.  Plaintiff claimed Gunner invited her to ride on the track.  Gunner claimed the plan was to retrieve his motorcycle from his parents' house and to ride in a riverbed off his parents' property.  As explained below, plaintiff has not shown a landowner extended an express invitation to come onto the property; thus, we need not address the scope of any invitation.

[4]    Plaintiff lost tissue from one of her fingers.  Gunner suffered a broken pelvis and a knee injury.

Donald's company settled. The Youngs were all granted summary adjudication on the negligence and premises liability claims, successfully arguing that those claims were barred by the primary assumption of risk doctrine. After plaintiff petitioned for a writ of mandamus, the Court of Appeal issued an alternative writ concluding there were triable issues of fact that precluded summary adjudication of those claims as to Donald and Christina. The trial court reinstated those causes of action against Donald and Christina alone. The provision of medical care claim was allowed to go forward against all remaining defendants.

On the day before trial began, defendants moved to amend their answer to add an affirmative defense of recreational use immunity under section 846. That section provides in relevant part that a landowner "owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose."[5] (§ 846, subd. (a) (section 846(a)).) Plaintiff opposed the motion. With the parties' agreement, the court deferred ruling.

As the trial progressed, however, questions repeatedly arose as to whether defendants would be permitted to amend their answer and whether the recreational use immunity defense was applicable. On the fourth day of trial, while plaintiff was still presenting her case, the court revisited the outstanding motion to amend. In opposition, plaintiff argued first that the motion was untimely. Plaintiff's counsel asserted that "we would have pursued discovery quite a bit differently" if plaintiff had known defendants would claim immunity under section 846. Second, plaintiff invoked the express invitee

---

[5] Section 846, subdivision (b) defines the term " 'recreational purpose.' "

exception, which provides that section 846(a) "does not limit the liability which otherwise exists for [¶] . . . [¶] [a]ny persons who are expressly invited rather than merely permitted to come upon the premises by the landowner." (§ 846, subd. (d)(3) (section 846(d)(3)).) Plaintiff argued that Gunner's invitation abrogated any immunity under section 846(a). The trial court again deferred ruling.

On the sixth day of trial, the court and counsel discussed the verdict form. Defendants argued the form should include a question regarding recreational use immunity. Plaintiff repeated her arguments that the motion to amend was untimely and the defense was inapplicable. The court again postponed its ruling.

Two days later, after plaintiff had rested, the court granted defendants' motion to amend, concluding the express invitee exception of section 846(d)(3) was inapplicable as a matter of law. It reasoned that neither Donald nor Christina had expressly invited plaintiff onto the property. Instead, it was Gunner, a nonowner, who had invited her. Accordingly, in the court's view, the general rule of section 846(a) shielded the parents from liability.

At the close of trial, the following facts were undisputed. Donald and Christina had never met or seen plaintiff before the accident, and she had never been on the property before. Neither parent personally invited plaintiff to enter their land. Gunner did not ask his parents' permission to invite plaintiff to enter and did not tell them that he had done so.

Before jury deliberations, the court entered a directed verdict for Christina on the negligence and premises liability claims because there was no evidence she had any role in the

track's design or maintenance.  The jury returned a verdict for the defense on all claims.  The court did not ask the jury for findings on the express invitee exception because it had previously concluded that the exception did not apply.[6]

Plaintiff moved for a new trial, asserting, *inter alia*, that the trial court erred by:  (1) allowing defendants to amend their answer to allege an affirmative defense under section 846(a); (2) excluding certain evidence relevant to the application of the express invitee exception; and (3) ruling that the express invitee exception was inapplicable.  The trial court denied the motion.

A divided Court of Appeal reversed and remanded for a new trial on the two claims related to the immunity defense.[7] The majority held that "where, as here, a child of the landowner is living with the landowner on the landowner's property and the landowner has consented to this living arrangement, the child's express invitation of a person to come onto the property *operates* as an express invitation *by the landowner* within the meaning of section 846, subdivision (d)(3), unless the landowner has prohibited the child from extending the invitation." (*Hoffmann*, *supra*, 56 Cal.App.5th at p. 1024, italics added.) Because there was "no evidence that Gunner's parents prohibited him from inviting guests onto the property," the majority concluded that "Gunner's express invitation of [plaintiff] stripped his parents of the immunity that would

---

[6]     Though the jury was not asked for findings on the express invitee exception, it was instructed with the full version of CACI No. 1010, which included that exception.

[7]     The Court of Appeal affirmed the defense judgment on plaintiff's claim against all defendants for negligent provision of medical care. (*Hoffmann*, *supra*, 56 Cal.App.5th at pp. 1024–1025, 1029.)  Plaintiff does not challenge that ruling.

otherwise have been provided to them by section 846." (*Id.* at p. 1024.) The dissent would have affirmed, reasoning that only an invitation issued by the landowner or by someone expressly authorized by the landowner can give rise to the exception.

## II.   DISCUSSION

We are called upon to decide whether an invitation made by a nonlandowner, without the landowner's knowledge or express approval, can satisfy the requirements of section 846(d)(3) and abrogate the landowner's immunity under section 846(a). This is a question of statutory interpretation. Our task is to ascertain the Legislature's intent and effectuate the enactment's purpose. When a statute's words are clear, their plain meaning controls and "we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.) While the words of a statute provide the most reliable indication of the Legislature's intent, we do not construe those words in isolation. Instead, we harmonize the enactment's various parts by considering the provision at issue in the context of the whole statutory scheme. (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 83.)

### A.   *Landowner Liability and Recreational Use Immunity Under Section 846*

The general rule is that a landowner "owes certain affirmative duties of care, as to conditions or activities on the land, to persons who come on the land." (6 Witkin, Summary of Cal. Law (11th ed. 2017) Torts, § 1224, p. 474.) Section 1714 provides that every person "is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the

6

management of his or her property . . . ." (§ 1714, subd. (a).) Under section 1714, landowners owe a duty to exercise ordinary care in managing their property in light of the foreseeability of injury to others. (*Rowland v. Christian* (1968) 69 Cal.2d 108, 119 (*Rowland*).) The *Rowland* court observed that section 1714, "which has been unchanged in our law since 1872, states a civil law and not a common law principle." (*Rowland*, at p. 112.)

Before our decision in *Rowland*, the liability of a possessor of land for injury to an entrant was generally based on the entrant's status. (See *Rowland*, *supra*, 69 Cal.2d at p. 113.) Entrants were divided into three categories: invitees; licensees; and trespassers. An "invitee is a business visitor who is invited or permitted to enter or remain on the land for a purpose directly or indirectly connected with business dealings between them."[8] (*Rowland*, at pp. 113–114.) A "licensee is a person like a social guest who is not an invitee and who is privileged to enter or remain upon land by virtue of the possessor's consent." (*Id.* at p. 113.) A "trespasser is a person who enters or remains upon land of another without a privilege to do so." (*Ibid.*; see also *Hamakawa v. Crescent Wharf & Warehouse Co.* (1935) 4 Cal.2d 499, 501 (*Hamakawa*).)

The general rule with respect to trespassers and licensees was that they took "the premises as they [found] them insofar as any alleged defective condition thereon may exist, and that the possessor of the land owe[d] them only the duty of refraining from wanton or willful injury." (*Rowland*, *supra*, 69 Cal.2d at p.

---

[8]    Invitees also included persons invited to enter or remain on land as a member of the public for a purpose for which the land was held open to the public. (*O'Keefe v. South End Rowing Club* (1966) 64 Cal.2d 729, 739.)

114.) Thus, a landowner generally owed no duty to a trespasser or licensee to keep the premises in safe condition.[9] (*Palmquist v. Mercer* (1954) 43 Cal.2d 92, 102; *Hamakawa, supra,* 4 Cal.2d at pp. 501–502.) As to business or other invitees, landowners owed a duty to exercise ordinary care to render the premises safe and to protect the invitee from injury. (*Edwards v. Hollywood Canteen* (1946) 27 Cal.2d 802, 809; see also *Rowland*, at p. 114.)

Over time, various exceptions to these rules developed. Confusion arose surrounding the scope of these exceptions, as well as the definitions of invitee, licensee, and trespasser. In *Rowland*, this court replaced the former concept of liability based on an entrant's status with the current application of liability based on ordinary principles of negligence under section 1714. (See *Rowland, supra,* 69 Cal.2d at pp. 115–119.) The *Rowland* court explained: "Although it is true that some exceptions have been made to the general principle that a person is liable for injuries caused by his failure to exercise reasonable care in the circumstances, it is clear that in the absence of statutory provision declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception should be made unless clearly supported by public policy." (*Rowland*, at p. 112.)

Section 846, enacted in 1963, creates "an exception in favor of landowners as against the liability imposed by section

---

[9] As to trespassers and licensees whom the landowner knew or should have known were on the land, a landowner had a duty to warn of artificial conditions constituting concealed dangers and to exercise reasonable care in carrying on activities. (See *Fernandez v. Consolidated Fisheries, Inc.* (1950) 98 Cal.App.2d 91, 97; *Blaylock v. Jensen* (1941) 44 Cal.App.2d 850, 852; see also *Oettinger v. Stewart* (1944) 24 Cal.2d 133, 138.)

1714." (*English v. Marin Mun. Water Dist.* (1977) 66 Cal.App.3d 725, 731 (*English*).) Section 846(a) provides: "An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on those premises to persons entering for a recreational purpose, except as provided in this section." This court has explained that section 846(a) "absolves California landowners of two separate and distinct duties" that might arise under section 1714: (1) "the duty to 'keep the premises safe' for recreational users"; and (2) "the duty to warn such users of 'hazardous conditions, uses of, structures, or activities' on the premises." (*Klein v. United States of America* (2010) 50 Cal.4th 68, 78 (*Klein*).) Here, we discuss only the first of these duties. Plaintiff does not argue in this court that defendants owed her a duty to warn.

The "purpose of section 846 is to encourage property owners 'to allow the general public to recreate free of charge on privately owned property.' " (*Delta Farms Reclamation Dist. v. Superior Court* (1983) 33 Cal.3d 699, 707, italics omitted, quoting *Parish v. Lloyd* (1978) 82 Cal.App.3d 785, 787.) Before the statute's enactment, there had been a "growing tendency" among California landowners "to withdraw land from recreational access" because of the potential liability they faced under section 1714. (*English, supra,* 66 Cal.App.3d at p. 731.) The Legislature sought to reduce landowners' potential exposure by removing the specter of tort liability to most

recreational users of private property.[10] The effect of section 846 was to " 'negate the tort,' " by eliminating certain duties a landowner would otherwise owe to recreational users. (*Klein, supra,* 50 Cal.4th at p. 78.) The existence of a duty, of course, is an essential element of tortious negligence. (*Ibid.*)

Section 846 immunity is broad, but it is not absolute. There are three statutory exceptions to the general rule of nonliability. At issue here is the express invitee exception, which is found in section 846(d)(3). It provides that section 846(a) "does not limit the liability which otherwise exists for [¶] . . . [¶] [a]ny persons who are *expressly invited* rather than merely *permitted* to come upon the premises *by the landowner*." (§ 846(d)(3), italics added.)[11]

In summary, section 1714 imposes a duty to use ordinary skill and care in the management of property in order to prevent

---

[10]     Section 846 was enacted before the issuance of our decision in *Rowland, supra,* 69 Cal.2d 108, and thus took effect when the pre-*Rowland* status-based liability framework was still in place. Nonetheless, we concluded in *Klein, supra,* 50 Cal.4th 68, that "section 846 makes a plaintiff's common law status . . . irrelevant to the question of the defendant landowner's liability." (*Klein,* at p. 87.)

[11]     Section 846, subdivision (d) provides in full that "[t]his section does not limit the liability which otherwise exists for any of the following: [¶] (1) Willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity. [¶] (2) Injury suffered in any case where permission to enter for the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose. [¶] (3) Any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner."

foreseeable injury to others. Section 846(a) eliminates an owner's duty to keep premises safe for entry or use by others for recreational purposes.[12] However, under section 846(d)(3), if an owner expressly invites someone onto the property and the person is injured while using the land for a recreational purpose, then the general release from liability is abrogated. The question arises whether an express invitation to enter, made by someone other than the landowner, can bring section 846(d)(3)'s exception into play and abrogate the elimination of liability. If so, who has the burden of proving the exception and how can that burden be discharged? In answering these questions, it is useful to review how the trial court and the Court of Appeal majority and dissent addressed them.

>    *B. A Nonlandowner Can Extend a Qualifying Invitation Under Section 846(d)(3) Under Some Circumstances*

Relying on the statutory text alone, the trial court concluded that only an invitation personally extended to plaintiff by a landowner could give rise to the section 846(d)(3) exception. Because there was no evidence that either Donald or

---

[12] The concurring opinion questions "whether social guests fall within the category of recreational entrants and users to which the basic rule of immunity in [section 846(a)] was aimed." (Conc. opn., *post*, p. 12.) However, as the opinion recognizes, the parties have assumed throughout much of this litigation that the immunity provided by section 846(a) "ordinarily applies to such persons." (Conc. opn., at p. 11; see also *id*. at p. 12, fn. 7.) Thus, we agree with the concurring opinion that "this is not the case for us to undertake a more comprehensive look at the threshold question whether section 846 . . . has any application to the social guests of members of a household." (*Id*. at p. 15.)

Christina had extended such an invitation, the court ruled that the express invitee exception was inapplicable.

The majority and dissent below read the statute more broadly. The majority ruled that the invitation issued by Gunner, a nonlandowner, triggered the section 846(d)(3) exception. In doing so, the majority recognized the creation of an "implied" agency. The dissent would have concluded that an invitation extended by a nonlandowner *can* qualify for the exception, but only if the landowner "expressly authorize[d]" the nonlandowner as an agent to make the invitation. (*Hoffman*, *supra*, 56 Cal.App.5th at p. 1031 (dis. opn. of Perren, J.).)

We conclude that the trial court read the statute too narrowly because it failed to consider the context provided by other parts of the Civil Code. We also reject the Court of Appeal majority's "implied" agency analysis. We agree, however, with the dissent's general conclusion that an invitation by a nonlandowner can, under some circumstances, trigger the exception.

To be sure, the plain language of the exception refers only to those "expressly invited . . . to come upon the premises *by the landowner*." (§ 846(d)(3), italics added.) The statute mentions no person other than the invitee and the landowner. Read in isolation, this language could be construed to cover only those situations in which a landowner had personally and expressly extended an invitation to the person seeking to rely on the exception. However, we do "not construe statutory language in isolation." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 11.) Rather, we construe it "as a thread in the fabric of the entire statutory scheme of which it is a part." (*Ibid.*) Section 846 is

part of the same statutory scheme as the California statutes governing agency relationships (Civ. Code, § 2295 et seq.). Construing the provisions together, we conclude that agency principles apply to the interpretation of section 846.

An agent "is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." (§ 2295.) An agent "may be authorized to do any acts which his principal might do, except those to which the latter is bound to give his personal attention." (§ 2304.) Moreover, "[e]very act which, according to [the Civil Code], may be done by or to any person, may be done by or to the agent of such person for that purpose, unless a contrary intention clearly appears." (§ 2305.) Nothing in section 846(d)(3) suggests an intent to preclude an agent from extending an invitation on behalf of a landowner. Reading section 846(d)(3) in conjunction with section 2305, there is clear statutory support for the conclusion that an invitation communicated by the landowner's properly authorized agent can activate the section 846(d)(3) exception. " 'The heart of agency is expressed in the ancient maxim: "*Qui facit per alium facit per se*." [He who acts through another acts by or for himself.]' " (*Channel Lumber Co. v. Porter Simon* (2000) 78 Cal.App.4th 1222, 1227 (*Channel Lumber*), quoting *Wallace v. Sinclair* (1952) 114 Cal.App.2d 220, 229.)

Were we to interpret section 846(d)(3) as only applying to those who receive an express invitation from a landowner personally, an owner could avoid the exception by the expedient of authorizing a third party to invite a person onto his property

in order to retain immunity under section 846(a). There is no indication the Legislature intended to create such a loophole.[13]

### C. Establishing Facts Sufficient To Trigger the Section 846(d)(3) Exception

As noted, the general rule of section 846(a) provides immunity to the landowner. Section 846(d)(3) sets out an exception. A plaintiff seeking to rely on an exception to a general statutory rule bears the burden of establishing the exception applies. (*Barnes v. Chamberlain* (1983) 147 Cal.App.3d 762, 767; see also *Simpson Strong-Tie Co., Inc., v. Gore* (2010) 49 Cal.4th 12, 23.) We conclude that one way for a plaintiff invoking section 846(d)(3) to meet that burden would be to rely on agency principles, and we clarify how those principles might apply in this context. In doing so, we take a different approach from that adopted by the Court of Appeal majority.

Section 846, with its negation of duty, stands side by side with the established principles of section 1714 and *Rowland*, *supra*, 69 Cal.2d 108. Because section 846 and its exceptions predated *Rowland*, some integration of the two approaches is needed. We harmonize these threads of the law by adopting an approach tailored to the particular framework of section 846. As

---

[13] Some appellate opinions have suggested or held that a "direct, personal request" from the landowner to the injured entrant is required to bring section 846(d)(3) into play. (*Johnson v. Unocal Corp.* (1993) 21 Cal.App.4th 310, 317; see also *Jackson v. Pacific Gas & Electric Co.* (2001) 94 Cal.App.4th 1110, 1116; *Wang v. Nibbelink* (2016) 4 Cal.App.5th 1, 32.) We disapprove of those decisions to the extent they held that a qualifying invitation under section 846(d)(3) may *only* be extended by the landowner personally.

to the claimed exception here, the Legislature expressly referred to an invitation "by the landowner" for the exception to apply. We import an agency analysis to determine under what circumstances landowners can authorize a nonlandowner to invite others onto their property with the consequence that they lose the immunity conferred by section 846(a). Under section 2305, any act that may be done by a person according to the Civil Code may be done by someone the person has made their agent for that purpose. Thus, when a landowner has properly authorized an agent to extend, on his or her behalf, an invitation to enter the land that invitation gives rise to the exception.

Importing an agency-derived analysis here ensures a more formal approach to section 846(d)(3)'s exception than reliance on a newly-created "implied agency" approach taken by the majority below. It is particularly appropriate to require a degree of specificity in a landowner's intentional delegation because an invitation by a properly authorized agent can function to strip a landowner of the immunity the Legislature took care to confer. Nothing we say here, in applying agency principles to section 846(d)(3), should be understood to undermine or run counter to long-settled broad principles relating to the law of agency.

Plaintiff agrees that agency principles can guide the determination whether an invitation extended by a nonlandowner qualifies for the express invitee exception. Alternatively, she suggests that section 846(d)(3) itself can be understood to encompass an invitation by a nonlandowner. Her reasoning depends on an overly broad reading of the term "landowner." She points out that other jurisdictions have expressly, and more expansively, defined the term "owner" in their recreational use immunity statutes to include others who occupy or control property. (See, e.g., Haw. Rev. Stat., § 520-2;

Wis. Stat., § 895.52(1)(d)(1); Neb. Rev. Stat., § 37-729(2); Ind. Code. § 14-22-10-2(c)(2); Or. Rev. Stat, § 105.672(4)(a); see also Tex. Civ. Prac. & Rem. Code. Ann., § 75.002(a)–(c).)[14] Plaintiff asserts these statutes share a "similarity of purpose" with section 846 and urges us to construe the term "landowner" in section 846(d)(3) to cover both property owners and other occupants. But a comparison of the language of these other statutes with that of section 846 undermines her argument. Our sister states have explicitly *defined* the term "owner" to include owners, occupants, or controllers of the land. If the term "owner" (or "landowner") naturally included other occupants of property, the explicit inclusion of others in those statutory definitions would not have been necessary. Section 846(d)(3), by comparison, uses only the term "landowner," without further elaboration. The most natural reading of this term is that it does not inferentially include others, like occupants.

Plaintiff also relies on language in section 846.2 to support her broad construction of "landowner." That statute provides general immunity for an "owner, tenant, or lessee of land or premises" against injuries to one "who has been expressly invited on that land or premises to glean agricultural or farm products for charitable purposes." (§ 846.2.) She asserts a more "inclusive" definition of "landowner" should be applied to section

[14] For example, Hawaii's recreational use immunity statute defines "owner" as "the possessor of a fee interest, a tenant, lessee, occupant, or person in control of the premises." (Haw. Rev. Stat, § 520-2.) In Nebraska's similar statute, the term "[o]wner includes tenant, lessee, occupant, or person in control of the premises." (Neb. Rev. Stat., § 37-729(2).) Under Wisconsin's statute, "owner" means "[a] person, including a governmental body or nonprofit organization, that owns, leases or occupies property." (Wis. Stat., § 895.52(1)(d)1.)

846 because the two statutes relate to the same topic and have a similar purpose. But the two statutes use different terms. Section 846(d)(3) refers only to a "landowner," while section 846.2 uses the phrase "owner, tenant, or lessee." Rather than suggesting the Legislature intended "landowner" to be more "inclusive," section 846.2's use of additional terms suggests the Legislature intended the two statutes to cover different groups of people. (See *Rashidi v. Moser* (2014) 60 Cal.4th 718, 725.)

> D. *The Analysis and Holding of the Court of Appeal Majority Were Flawed*

We reject the analysis of the Court of Appeal majority. The majority concluded that an invitation by a landowner's child "operates as an express invitation by the landowner" if: (1) the child "is living with the landowner on the landowner's property"; (2) the landowner "has consented to this living arrangement"; and (3) the landowner has not "prohibited the child from extending the invitation." (*Hoffmann*, *supra*, 56 Cal.App.5th at p. 1024.)

The majority reasoned that, when parents allow a child to live on their property, they "impliedly permit [the child] to invite friends to the property." (*Hoffmann*, *supra*, 56 Cal.App.5th at p. 1026.) Thus, it concluded that, "[a]bsent very unusual circumstances, such as an express order not to bring a friend to the property, it is reasonable to say that, so long as they are living together, a child may invite a guest onto the parents' property." (*Ibid.*) The majority also reasoned that section 846 "does not preclude a landowner from delegating authority to a child to invite guests onto the property for social purposes." (*Hoffmann*, at p. 1026.) Such a delegation, according to the majority, "creates an agency relationship." (*Ibid.*, citing

17

*Channel Lumber*, *supra*, 78 Cal.App.4th at p. 1227.)  Here, the majority found that the "existence of such a delegation" could be "implied."  (*Hoffmann*, at p. 1026.)  Thus, they ruled that, "[b]ecause Gunner was acting as his parents' agent when he expressly invited [plaintiff] onto the property, the invitation is deemed to have been expressly extended by his parents." (*Ibid.*)

Though we agree that landowners *can* authorize nonowners to expressly invite others onto their property, we reject the proposition that a landowner *necessarily does so* by allowing a child to live on the property and failing to prohibit the child from extending the invitation.  The question presented here is not whether a child can invite friends over.  The legal question is whether the circumstances establish that a parent has authorized the child to issue an invitation on the parent's behalf, such that the child's invitation strips the landowner of immunity.  The majority's reasoning has several flaws.

First, the majority cites *Channel Lumber*, *supra*, 78 Cal.App.4th 1222, as supporting its conclusion that "delegating authority to a child to invite guests onto the property for social purposes . . . creates an agency relationship." (*Hoffmann*, *supra*, 56 Cal.App.5th at p. 1026.)  The majority's citation is inapt. *Channel Lumber* says nothing about whether a parent's delegation of that authority to a child creates an agency relationship.  Instead, it involved a malpractice suit by a corporation against an outside law firm the corporation had previously hired to represent it in a commercial case.  The firm prevailed against the malpractice allegations, and the court awarded fees and costs under Corporations Code section 317. That section permits, and sometimes requires, a corporation to reimburse legal fees and costs incurred "by reason of the fact that the person is or was an agent of the corporation." (Corp.

Code, § 317, subd. (b).) *Channel Lumber* recognized that an attorney retained by a corporation has the attributes of both an independent contractor and agent. (*Channel Lumber*, at p. 1227.) However, agency principles demonstrated that an outside attorney retained by a corporation to represent it at trial was not an agent of the corporation, but instead was "an independent contractor of his or her corporate client." (*Id.* at p. 1229.) The case had nothing to do with an "implied" delegation of authority for purposes of section 846, under the circumstances the Court of Appeal majority recognized, nor does it stand for the proposition attributed to it.

Second, the factors listed in support of the finding of an agency relationship between Gunner and his parents are insufficient to create such a relationship. "Agency exists when a principal engages an agent to act on the principal's behalf and subject to its control." (*Church Mutual Ins. Co., S.I. v. GuideOne Specialty Mutual Ins. Co.* (2021) 72 Cal.App.5th 1042, 1061.) The "essential elements necessary to establish an agency relationship are ' " 'manifestation of consent by one person to another that the other shall act on his [or her] behalf and subject to his [or her] control, and consent by the other so to act.' " ' " (*Id.* at pp. 1061–1062, quoting *van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 571 (*van't Rood*).) " ' "The principal must in some manner indicate that the agent is to act *for him*, and the agent must act or agree to act on his behalf and subject to his control." ' " (*van't Rood*, at p. 571, quoting *Edwards v. Freeman* (1949) 34 Cal.2d 589, 592, italics added.) Typically, an agency is created by an express contract or authorization. (§ 2307.) However, an agency relationship may also be created informally, based on the circumstances and the parties' conduct. (*Brand v. Mantor* (1935) 6 Cal.App.2d 126,

130.) "No particular words are necessary, nor need there be consideration. All that is required is conduct by each party manifesting acceptance of a relationship whereby one of them is to perform work *for the other under* the latter's direction." (*Malloy v. Fong* (1951) 37 Cal.2d 356, 372, italics added.) That said, "an agency cannot be created by the conduct of the agent alone; rather, *conduct by the principal* is essential to create the agency." (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 587–588.)

The majority's conclusion that Gunner was acting as his parents' agent for purposes of section 846(d)(3) was based on three factors: (1) that he was living on his parents' property; (2) that his parents had consented to the living arrangement; and (3) that there was no evidence his parents had prohibited him from making the invitation. Preliminarily, the mere existence of a parent-child relationship does not create an agency. (See *Angus v. London* (1949) 92 Cal.App.2d 282, 285 ["The relationship of father and child, standing alone, does not prove the agency of either"]; see also *Van Den Eikhof v. Hocker* (1978) 87 Cal.App.3d 900, 904.) There is no reason to think that simply allowing a child to live at home changes this conclusion. Further, Donald and Christina's failure to prohibit Gunner from extending the invitation does not strike us as conduct implying that Gunner was authorized to act *on their behalf* in extending an invitation, in such a manner that extinguished their immunity.

Common social convention would indicate that parents often permit a child, even a minor of a certain age, to invite social guests onto the family property. However, that convention standing alone would be insufficient to create an agency relationship. As the case law makes clear, to constitute

20

an agency relationship the authority delegated must be that "which permits the agent to act 'not only *for*, but *in the place of*, his principal' in dealings with third parties." (*Channel Lumber*, *supra*, 78 Cal.App.4th at p. 1227, quoting *People v. Treadwell* (1886) 69 Cal. 226, 236.) As applied to the context of section 846(d)(3), that would mean that an agency relationship can only be created if a landowner delegated the authority to a nonlandowner to invite guests *on the landowner's behalf*. Mere implied permission to invite friends over would not suffice to trigger section 846(d)(3)'s exception. While a child may be allowed to invite friends of their choosing, without more, the invitation is theirs alone. Further, under the facts in this record, Gunner cannot be said to have acted on his parents' " ' "behalf and subject to [their] control." ' " (*van't Rood*, *supra*, 113 Cal.App.4th at p. 571.) His parents did not know plaintiff, nor were they aware of the invitation. The evidence adduced at trial points to Gunner acting on his own behalf and not under the control of his parents.

Third, the majority's holding is inconsistent with the statutory language. Section 846(d)(3) distinguishes those "expressly invited" from those who are "merely permitted" to come upon the premises. By excluding from the exception those who are "merely permitted" to come upon the premises by the landowner, the statute makes clear a landowner must do something more than simply tolerate a person's presence on the property for the exception to apply.[15] By allowing a child to

---

[15] Section 846, subdivision (c), establishes that a landowner "who gives permission to another for entry or use for [any recreational] purpose upon the premises does not thereby do any

invite friends over for social purposes a parent permits those friends to enter their land. But it goes too far to suggest that they, as property owners, expressly extend such an invitation to thus divest themselves of immunity.

Fourth, the majority's holding would place the burden of proving the exception's application on the wrong party. As noted above (see *ante*, p. 15), the general rule of section 846(a) relieves a landowner of any duty to keep his or her premises safe for recreational users. Section 846(d)(3) creates an exception to the rule of section 846(a) for those persons who are expressly invited to come upon the premises by the landowner. Plaintiff seeks the shelter of this exception. Accordingly, she should bear the burden of persuasion on the point. The majority improperly placed the burden on defendants to show they had prohibited Gunner from extending an invitation in order to retain their immunity. (*Hoffmann*, *supra*, 56 Cal.App.5th at p. 1024.)

Finally, the majority's reliance on *Calhoon, supra*, 81 Cal.App.4th 108 was misplaced. There, the plaintiff was injured while skateboarding in his friend's driveway. He sued his friend's parents for premises liability. (*Id.* at pp. 110–111.) Opposing summary judgment, the plaintiff produced evidence he was "personally invited" onto the property by the defendants' son. (*Id.* at p. 113.) The trial court ruled the plaintiff's claims were barred by section 846(a). (*Calhoon*, at p. 113.) The

_____

of the following: [¶] (1) Extend any assurance that the premises are safe for that purpose. [¶] (2) Constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed. [¶] (3) Assume responsibility for or incur liability for any injury to person or property caused by any act of the person to whom permission has been granted except as provided in this section."

plaintiff appealed, relying on the express invitee exception. The defendants countered that they "did not specifically invite [the plaintiff] onto their property *for the purpose of skateboarding*." (*Id.* at p. 114.) The defendants did not dispute the plaintiff was invited, but simply argued the invitation was not for a recreational purpose. The court found the express invitee exception applied, reasoning the statute "does not say a person must be invited for a *recreational* purpose." (*Ibid.*) In light of the failure of the *Calhoon* defendants to dispute that the invitation as issued was sufficient, the court had no occasion to delve more deeply into that question.

In the end, the majority's holding contains no limiting principle. The majority reasoned that Donald and Christina impliedly delegated invitational authority to Gunner "by allowing him to live on the property." (*Hoffmann*, *supra*, 56 Cal.App.5th at p. 1026.) But that rationale could arguably apply to anyone allowed to live on the Youngs' property, whether related to the Youngs or not. There is no indication the Legislature intended such an expansive construction of section 846(d)(3). If the Legislature wishes to limit the scope of the immunity it confers, or to add to the list of those who may make a qualifying invitation, it may do so. As the Supreme Court has observed, however, "it's the job of Congress by legislation, not this Court by supposition, both to write the laws and to repeal them." (*Epic Sys. Corp. v. Lewis* (2018) ___U.S.___ [138 S.Ct. 1612, 1624, 200 L.Ed.2d 889, 902.)

### E.    *Remand Is Warranted*

To recap, the trial court read section 846(d)(3) too narrowly, in ruling that the exception could not apply because neither Donald nor Christina personally invited plaintiff onto

23

their property. The majority below read section 846(d)(3) too broadly, holding that any invitation by a landowner's live-at-home child impliedly operates as an express invitation by the landowner unless the child has been prohibited from extending the invitation. We hold that a qualifying invitation under section 846(d)(3) may be made by a landowner's authorized agent who issued the invitation on the landowner's behalf. Here, the record does not show that Gunner was so authorized; therefore, we reverse the Court of Appeal's judgment.[16]

Plaintiff here did not make the required showing, but that fact does not end the matter. The trial court's ruling on defendants' motion to amend was based on its conclusion that the express invitee exception did not apply as a matter of law. In her new trial motion, plaintiff argued both that the express invitee exception did apply and that the trial court erred in allowing defendants to amend their answer to allege an affirmative defense under section 846(a) in the first place. When questioned about the possibility of a remand at oral argument, defendants' counsel claimed that the Court of Appeal already held that plaintiff's "new trial argument [was] forfeited."

That assertion misreads the Court of Appeal's opinion. The Court of Appeal's forfeiture finding went only to plaintiff's cause of action for negligent provision of medical care. (*Hoffmann, supra,* 56 Cal.App.5th at p. 1028.) The court did not

---

[16]     As emphasized by the concurring opinion, we do not foreclose other ways that a plaintiff might "make the showing that a nonlandowner's invitation operates as an invitation by the landowner." (Conc. opn., *post,* p. 16.) Rather, we "conclude that *one way* for a plaintiff invoking section 846(d)(3) to meet [the burden of showing the exception applies] would be to rely on agency principles." (See *ante,* p. 15, italics added.)

address plaintiff's argument that the trial court erred by denying her new trial motion as to her other causes of action.

Other arguments supporting and opposing remand were raised before, but not addressed by, the Court of Appeal in light of its holding which we now reverse. Plaintiff's argument that the trial court erred by denying her motion for a new trial on the negligence and premises liability claims remains outstanding. We remand the matter to the Court of Appeal for it to address those arguments in the first instance.

## III.   DISPOSITION

The Court of Appeal's judgment is reversed. The matter is remanded to the Court of Appeal for it to address plaintiff's claim that the trial court erred by denying her motion for a new trial and for further proceedings consistent with this opinion.

**CORRIGAN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**LIU, J.**
**JENKINS, J.**
**GUERRERO, J.**

HOFFMANN v. YOUNG

S266003

Concurring Opinion by Justice Kruger

More than half a century ago, the Legislature enacted Civil Code section 846 (section 846) to immunize property owners from liability for injuries suffered by individuals who use or enter their property for fishing, hiking, or various other recreational purposes. The purpose of the law was "to encourage property owners 'to allow the general public to recreate free of charge on privately owned property' " without facing lawsuits for their trouble. (*Delta Farms Reclamation Dist. v. Superior Court* (1983) 33 Cal.3d 699, 707, italics omitted.)

Today this court considers how that same law applies when the injured party is not a member of the general public, but a household guest — a friend asked to come over by the child of the property owners. Given the way the parties have litigated the case, I agree with the majority's decision to remand for further consideration.

I write separately for two main reasons. First, the parties' focus on *how* section 846 immunity applies in this situation skips over the question *whether* the statute applies at all. As the majority correctly recognizes, that critical threshold question remains open (maj. opn., *ante*, at p. 12, fn. 12); I write to explain why the question is, in my view, a substantial one. Second, even assuming section 846 immunity applies unless the injured guest falls within the exception for persons "expressly invited . . . by the landowner" (§ 846, subd. (d)(3)), the majority's

1

holding on this point is limited.  The majority concludes that, as the parties themselves have suggested, "one way" for the guest to overcome section 846 immunity would be to prove that the child acted as his parents' agent for purposes of issuing the invitation.  (Maj. opn., *ante*, at p. 15.)  But the majority does not hold this is the *only* possible way for an injured guest to overcome section 846 immunity; it leaves other possibilities open for exploration.  (Maj. opn., *ante*, at p. 25, fn. 16.)  I write to suggest a possible alternative path, more fitting for this context, that can be considered in an appropriate case.

In the end, the narrow questions that have been litigated and decided so far in this proceeding are insufficient to resolve the broader issue at stake:  whether the recreational use immunity law bars compensation for household guests who are injured because of a property owner's carelessness.  Any firm conclusions on this subject will have to await further litigation. In the meantime, however, the Legislature may wish to cut to the chase by amending section 846 to more clearly specify the limits of the immunity it confers.

## I.

Under modern tort law, the general rule is that " '[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person,' " unless a statutory exception applies or a court recognizes an exception based on relevant policy considerations.  (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 771, citing *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*).)

Section 846 is one such statutory exception.  First enacted in 1963, subdivision (a) of the statute reads in its current form:

"An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on those premises to persons entering for a recreational purpose, except as provided in this section." (§ 846, subd. (a).) This provision sets out a general no-duty rule — effectively, an immunity from tort claims — for " 'owner[s]' " of " 'any' " interest in real property facing a premises liability claim from someone who used or entered that property " 'for any recreational purpose.' " (*Klein v. United States of America* (2010) 50 Cal.4th 68, 77; see *id.* at p. 78.)

There are, however, a handful of exceptions to the statutory no-duty rule. "Broadly speaking," these exceptions "relate to (a) victims of wilful or malicious conduct by the owner, (b) persons who have paid consideration for permission to enter, and (c) express invitees." (*Delta Farms Reclamation Dist. v. Superior Court, supra,* 33 Cal.3d at p. 708 (*Delta Farms*); § 846, subd. (d).)

As they argued the case below, both sides assumed plaintiff Mikayla Hoffmann counts as a recreational user or entrant to whom the general rule of immunity in subdivision (a) applies. They therefore focused their attention on whether she falls within the only potentially applicable exception to recreational use immunity: the exception for persons "expressly invited . . . by the landowner" set out in section 846, subdivision (d)(3). Both sides further assumed that the phrase "expressly invited" bears the meaning a casual reader would ascribe to that phrase in 2022: a direct, person-to-person invitation to a social guest, as to a birthday celebration or dinner party. Their

3

dispute, to date, has primarily revolved around whether Gunner Young's invitation to Mikayla can be ascribed to his parents — the landowners — for purposes of the subdivision (d)(3) exception.

This series of assumptions is understandable, given the way we ordinarily use the relevant statutory terms in everyday speech.  But the issues are more complicated than the parties here have assumed.  Section 846 was written to adjust the rules of landowner recreational liability at a time when those rules — and the terminology used to describe them — were very different than they are today, and the statute's terms may bear meanings that are neither obvious nor intuitive to a modern reader.  To definitively decide how, and whether, section 846 applies in this situation would require exploring a number of additional, threshold questions about the proper interpretation of section 846 in its historical context.  I start by describing that context and those threshold interpretive questions, as I see them, before turning to the separate, follow-on questions framed by the parties' litigation in this particular case.

**A.**

Although section 846 constitutes an exception to the modern rule imposing a general duty of reasonable care, section 846 antedates the rule by several years.  At the time the Legislature wrote section 846 in 1963, California courts still employed a common law status-based framework that divided visitors to land into three categories — trespassers, licensees, and invitees — with different tort duties owed to each.  Some five years later, in our seminal 1968 decision in *Rowland*, we would discard that framework in favor of the modern approach

we apply today. But before discarding that framework, *Rowland* helpfully summarized it as follows:

> "Generally speaking a *trespasser* is a person who enters or remains upon land of another without a privilege to do so; a *licensee* is a person like a social guest who is not an invitee and who is privileged to enter or remain upon land by virtue of the possessor's consent, and an *invitee* is a business visitor who is invited or permitted to enter or remain on the land for a purpose directly or indirectly connected with business dealings between them. [Citation.] [¶] Although the invitor owes the invitee a duty to exercise ordinary care to avoid injuring him [citations], the general rule is that a trespasser and licensee or social guest are obliged to take the premises as they find them insofar as any alleged defective condition thereon may exist, and that the possessor of the land owes them only the duty of refraining from wanton or willful injury." (*Rowland, supra,* 69 Cal.2d at pp. 113–114, italics added.)

In other words, landowners owed a duty of reasonable care only to "invitee[s]," which we described in *Rowland* as meaning "business visitor[s]." (*Rowland, supra,* 69 Cal.2d at pp. 113–114.) Licensees, by contrast — including social guests — were owed only a duty to refrain from "wanton or willful injury." (*Id.* at p. 114.) The general idea was that invitees whose entrance benefited the landowner in some way — patrons at a grocery store, for example — could reasonably expect that the landowner would take precautions to protect them from dangerous conditions of the premises. But not so for social guests. The Second Restatement described the usual explanation for the rule: "[T]he guest is expected to take the premises as the possessor himself uses them, and does not expect and is not entitled to expect that they will be prepared

for his reception, or that precautions will be taken for his safety" that the possessor himself does not take for his own safety or the safety of his family. (Rest.2d Torts, § 330, com. h, subd. (3), p. 175 (Second Restatement).)[1]

Although we didn't specifically mention it in *Rowland*, over time courts had expanded the category of invitees beyond business visitors to include certain other members of the public, sometimes termed "public invitees." (See, e.g., *O'Keefe v. South End Rowing Club* (1966) 64 Cal.2d 729, 737 (*O'Keefe*).) We would explicitly adopt this understanding of the term "invitee" in *O'Keefe*, quoting the Second Restatement's definition with approval:

" 'Invitee Defined. (1) An invitee is either a public invitee or a business visitor. (2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public. . . .' . . . 'It is not enough, to hold land open to the public, that the public at large, or any considerable number of persons, are permitted to enter at will upon the land for their own purposes. As in other instances of invitation, there must be some inducement or encouragement to enter, some conduct indicating that the premises are provided and intended for public entry and use,

---

[1] On this point see also *Rowland*, *supra*, 69 Cal.2d at page 114: "the guest should not expect special precautions to be made on his account" and "if the host does not inspect and maintain his property the guest should not expect this to be done on his account." As we noted in *Rowland*, courts invented various exceptions to mitigate the harshness of these rules, including liability for "active negligence" in the treatment of licensees. (*Id.* at p. 115; see *id.* at pp. 114–116.) Those exceptions are not directly relevant here.

and that the public will not merely be tolerated, but is expected and desired to come.' " (*O'Keefe, supra*, 64 Cal.2d at pp. 737–738.)

Case law offered illustrations of the duties owed to public invitees. For instance, in *Smith v. U.S.* (N.D.Cal. 1953) 117 F.Supp. 525 (*Smith*) — a case we cited with approval in *O'Keefe* — the court found a landowner (there, the federal government) was responsible for injuries suffered by a camper when a tree limb fell on him in a designated campsite in a national forest. The landowner was responsible, the court explained, because "[u]nder the law of California the plaintiff was an invitee." (*Smith*, at p. 526.) There was, the court reasoned, a public invitation to use the campsite because "[a] booklet issued by the Forest Service of the Department of Agriculture says 'Public Use of National Forests is Invited' " and because "the uses to which the campsites were put by the plaintiff were in accord with their design and purpose." (*Id.* at p. 527.) As to this latter point, the court explained that "California follows the rule that a person on the land of another is an invitee if the owner or occupant held out an invitation or allurement which led the visitor to believe that the use made by him of the premises was in accordance with intention and design." (*Ibid.*, citing *Barker v. Southern Pacific Co.* (1931) 118 Cal.App. 748, 751.)

As this passage suggests, at common law an invitation to enter or remain on land could be either "express" or "implied." (See e.g., *Neil v. Feather River Lumber Co.* (1928) 203 Cal. 502, 503 [deciding whether the plaintiff was an "express or implied invitee of defendant"]; *Hall v. Southern Cal. Edison Co., Ltd.* (1934) 137 Cal.App. 449, 453 ["expressly invited"]; *Stewart v. Lido Cafe* (1936) 13 Cal.App.2d 46, 50 ["expressly invited"];

*Gastine v. Ewing* (1944) 65 Cal.App.2d 131, 141 ["expressly is invited"]; *Street v. Glorence Bldg. Co.* (1959) 176 Cal.App.2d 191, 196 ["expressly invited"]; *Farrier v. Levin* (1959) 176 Cal.App.2d 791, 797–798 ["expressly invited" vs. "impliedly invited" (italics omitted)]; *Speece v. Browne* (1964) 229 Cal.App.2d 487, 494 ["expressly invited"].)  An "express" invitation was essentially what it sounds like:  an explicit solicitation of entry.  But the invitation did not need to be individually or personally extended, so long as it was for a qualifying purpose; express invitations could be (and often were) issued to the public at large, via an advertisement, sign, or other public encouragement to enter. (See *Borgnis v. California-Oregon P. Co.* (1927) 84 Cal.App. 465, 468 ["All are invitees who are *expressly invited*, regardless of any question of benefit or advantage to the inviter, *even though the invitation be not individual, but to the public generally*" (italics added)].)  An "implied" invitation, by contrast, could be extended by acts of the landowner, or features of the property, that a reasonable person would understand as indicating an encouragement to enter for an invitee-qualifying purpose. (*Stewart*, at pp. 50–51; see, e.g., *Smith*, *supra*, 117 F.Supp. at p. 527 [finding an implied invitation to use campsite areas in the arrangement of the campsites, maintenance of roads leading to the sites, and other indicia of openness to the public].)  Whether express or implied, an invitation to enter the land served to distinguish invitees from persons merely "permitted to enter at will upon the land for their own purposes," to whom no duty of

care was ordinarily owed.  (Second Restatement, *supra*, § 332, com. d, p. 178.)[2]

It was against this backdrop that the Legislature enacted section 846 in 1963.  The general rule of section 846, subdivision (a) provided that no duty was owed to persons entering or using the property for certain recreational purposes.[3]  But together with the exceptions, the overall effect of the immunity, as it would have interacted with the common law rules in place at the time, was less than sweeping.  "Willful or malicious failure to guard or warn" any user or entrant (§ 846, subd. (d)(1)) would continue to subject a landowner to liability, just as at common law.  (See *Rowland*, *supra*, 69 Cal.2d at p. 114 [landowner generally owed all persons, including trespassers and licensees, a "duty of refraining from wanton or willful injury"].)  Section 846, subdivision (d)(2) specified that nothing in the immunity statute affected the duties owed to business invitees who had paid to enter for a recreational purpose.  And the same was true of other invitees — including, presumably, public invitees — under subdivision (d)(3), so long as the invitation was "express[]"

---

[2]    The Restatement offered an illustration of this distinction: "When a landowner tacitly permits the boys of the town to play ball on his vacant lot they are licensees only; but if he installs playground equipment and posts a sign saying that the lot is open free to all children, there is then a public invitation, and those who enter in response to it are invitees."  (Second Restatement, *supra*, § 332, com. d, p. 179.)

[3]    As drafted in 1963, the statute was originally written without numbered, lettered subdivisions.  (See Sen. Bill No. 639 (1962–1963 Reg. Sess.) as amended June 21, 1963, § 1.)  Section 846 was later reorganized without undergoing any substantive changes relevant here; I use the modern lettering and numbering of the statute's subdivisions for clarity.

rather than implied. (§ 846, subd. (d)(3); see *Rowland*, at p. 114 ["the invitor owes the invitee a duty to exercise ordinary care to avoid injuring him"].) In other words, it seems paying customers and many other invitees were generally owed the same duty of care under the statute that they were already owed at common law — except that no duty would extend to invitees where the invitation was merely implied, rather than express.[4]

The main effect of the statute, then, would have been to bar a tort suit under conditions similar to those cited in the *Smith* case, in which the court found an implied invitation based on the maintenance of facilities suggesting openness to the general public. (*Smith, supra,* 117 F.Supp. at p. 527.) In other words, a landowner would bear no responsibility for injuries suffered by nonpaying campers, hikers, and similar adventurers, simply because the landowner maintained roads, campsites, or other similar facilities implying openness to public recreational use.

This understanding lines up with what this court has long acknowledged to be the purpose of section 846: " 'to allow the general public to recreate free of charge on privately owned property.' " (*Delta Farms, supra,* 33 Cal.3d at p. 707, italics omitted.) Various interested actors described the bill in just this

---

[4] As the majority observes, section 846, subdivision (d)(3) "distinguishes those 'expressly invited' from those who are 'merely permitted' to come upon the premises." (Maj. opn., *ante,* at p. 22.) As noted above (*ante,* at pp. 8–9 & fn. 2), the common law likewise distinguished between members of the public "permitted to enter at will upon the land for their own purposes" (licensees) and members of the public who "will not merely be tolerated, but [are] expected and desired to come" (invitees). (Second Restatement, *supra,* § 332, com. d, pp. 178–179.)

way.  For instance, the Department of Fish and Game explained in a memorandum to the Governor that the basic rule of immunity in section 846, subdivision (a), would encourage landowners to "open up" land "now closed to public access."  (Cal. Resources Agency, Dept. of Fish and Game, mem. to Governor Edmund G. Brown, July 10, 1963.)  Senator Stephen P. Teale, the bill author, similarly explained that the purpose of section 846 was to alleviate the concerns of landowners who had become reluctant to "grant permission to trespass" because of the potential for tort liability.[5]  (Sen. Stephen P. Teale, letter to Governor Edmund G. Brown, June 20, 1963.)  But he went on to explain:  "The owner's liability remains unchanged when a fee is charged or where an owner owes a duty to, or has granted the legal status of, an invitee."  (*Ibid.*)[6]

## B.

At the time section 846 was enacted, Mikayla would not have been considered an "invitee" for purposes of the law fixing the liability of owners of land; she would instead have been considered a social guest.  (See, e.g., *Rowland, supra*, 69 Cal.2d at pp. 113–114 [discussing this confusing bit of terminology]; see

---

[5]    The phrase "permission to trespass" is admittedly something of a contradiction in terms, but it does connote concern with access by members of the public, as opposed to, for example, dinner guests.

[6]    The same or similar statements of purpose appear in several other memoranda in the Governor's bill file.  An internal memorandum to the Governor, for instance, repeated that the purpose of the statute was to encourage landowners to grant "permission to trespass" and repeated the bill author's statement about the meaning of the exceptions in what is now subdivision (d) of section 846.  (Paul D. Ward, Legis. Secretary, bill mem. to Governor Edmund G. Brown, July 16, 1963.)

generally Second Restatement, *supra*, § 332, com. a, p. 176.) As this case was litigated at trial and in the Court of Appeal, the parties assumed subdivision (a) ordinarily applies to such persons, if they were injured while engaged in recreational activities on their hosts' property.[7] The parties have further assumed — both in the Court of Appeal and in their briefing before our court — that the "express invitee" exception preserves the ability of some social guests to sue — but only so long as those social guests can be said to have been invited (in the colloquial sense) "expressly . . . by the landowner." (§ 846, subd. (d)(3).)

It is, however, at least questionable whether social guests count as persons "expressly invited" within the meaning of section 846, because social guests were not "express invitees" — or, indeed, invitees of any kind — under the common law that formed the backdrop to section 846's enactment. (See *People v. Lopez* (2003) 31 Cal.4th 1051, 1060 [terms known to the common law are presumed to have their common law meaning]; *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 19–20 [same is true even where term also has colloquial meaning in everyday speech].) And this question about the scope of the (d)(3) exception naturally leads to a more fundamental question about the scope of the statute's general rule: whether social guests fall within the category of

---

[7] In this court, Mikayla has for the first time briefly alluded to a "social guest exception" to section 846 immunity — but without developing any argument for reading such an "exception" into the terms of section 846, subdivision (a), as opposed to relying on the "express invitation" exception in section 846, subdivision (d)(3). I agree with the majority's decision to decline to address any argument about subdivision (a) in the first instance, and to instead allow the parties to litigate the question on remand, as appropriate.

recreational entrants and users to which the basic rule of immunity in subdivision (a) was aimed in the first place. Indeed, given the background common law in place at the time, it is unclear why the Legislature would have intended *either* the statute's general immunity provision *or* its "expressly invited" exception to include social guests. The basic rule of section 846, subdivision (a) operates to bar tort lawsuits by relieving landowners of any duty of care they might otherwise owe to recreational users. At common law, social guests were not owed a general duty of reasonable care. (*Rowland, supra,* 69 Cal.2d at p. 114.) Why would the Legislature have written subdivision (a) to eliminate a duty of care that did not otherwise exist? And why would the Legislature have created a special exception in section 846, subdivision (d)(3) specifically to allow tort lawsuits by a class of persons — social guests of the landowner — who were not entitled to sue in the first place?

It is true that some appellate courts have made the same assumptions the parties now make about the meaning of section 846. But at least until now, section 846 has not been the focus of a great deal of judicial scrutiny. Indeed, no California court cited section 846 in any decision until 1977 — 14 years after section 846 was enacted, and nine years after *Rowland* recognized the duties of care a landowner owes to all persons, including social guests and other licensees. (*Rowland, supra,* 69 Cal.2d at pp. 119–120.)[8] It was not until 1993 — 30 years after

---

[8]    The first California case to cite section 846 was *English v. Marin Mun. Water Dist.* (1977) 66 Cal.App.3d 725. Two federal cases and one out-of-state case had mentioned section 846 earlier, but in passing and without any substantive discussion or analysis. (See *Garfield v. U.S.* (W.D.Wis. 1969) 297 F.Supp.

the statute's enactment — that the Court of Appeal, in *Johnson v. Unocal Corp.* (1993) 21 Cal.App.4th 310, first had occasion to interpret the "expressly invited" exception. But the *Johnson* court engaged in no significant analysis of the question; its brief discussion of the issue simply assumed the phrase bore the colloquial meaning it would have had in 1993 — a "direct, personal" invitation, as for afternoon coffee or a dinner party — without ever acknowledging the different meaning it might have carried when enacted. (*Id.* at p. 317.) Since then, *Johnson*'s language has been often repeated, but never analyzed. (See *Calhoon v. Lewis* (2000) 81 Cal.App.4th 108, 113 (*Calhoon*); *Jackson v. Pacific Gas & Electric Co.* (2001) 94 Cal.App.4th 1110, 1116; *Wang v. Nibbelink* (2016) 4 Cal.App.5th 1, 32.)

In short, California case law to date has neither recognized the common law meaning of the (d)(3) exception — under which social guests, as noninvitees at common law, would fail to qualify — nor considered the possibility that the personal social guests of household members were never intended to fall within the category of recreational users or entrants to whom section 846, subdivision (a) applies in the first place. Instead, the Courts of Appeal have generally proceeded on the assumption that some personal, social invitations to enter property qualify for the (d)(3) exception, but only invitations extended in some form by the technical owner of the estate or other real property interest. In the very few cases in which the issue has concerned a social invitation issued by a child or other member of the landowner's household, courts have sought to

_____

891, 896, fn. 3; *Copeland v. Larson* (Wis. 1970) 174 N.W.2d 745, 749, fn. 4; *Gard v. U.S.* (N.D.Cal. 1976) 420 F.Supp. 300, 302, fn. 1.)

avoid the seeming arbitrariness of the "by the landowner" limitation either by ignoring it (*Calhoon, supra,* 81 Cal.App.4th at p. 114) or by invoking a background "agency law" principle under which a child's invitation may be imputed to his landowner parents (this case).

Admittedly, section 846 now exists within the landscape of modern tort law, and it is unclear what the effects would be of interpreting the statute to apply as it did at the time it was enacted, before the significant changes wrought by *Rowland.* Because of the way the parties have litigated the issues, this is not the case for us to undertake a more comprehensive look at the threshold question whether section 846 — a statute designed to encourage private landowners to open their property to public recreational users — has any application to the social guests of members of a household. I therefore agree with the majority's decision to leave that question open. (See maj. opn., *ante,* at p. 12, fn. 12.) For reasons I've explained, however, the issue is a substantial one, and it warrants further exploration in an appropriate case.

## C.

With that said, I turn to the question the parties have raised here. The parties' core dispute at all stages of this litigation has been whether Gunner's personal invitation to Mikayla can be attributed to his property-owning parents on some form of agency-law theory, thereby bringing his invitation within the (d)(3) exception for persons invited to the property "by the landowner." The Court of Appeal ruled that it could, resting that conclusion on the invention of a new "implied agency" relationship between landowner parents and their live-

at-home children. (*Hoffmann v. Young* (2020) 56 Cal.App.5th 1021, 1029.)

Today's majority reverses on the ground that the Court of Appeal's agency holding has no basis in actual agency law. (Maj. opn., *ante*, at pp. 19–24.) The majority acknowledges that "one way" for an invitation by a nonlandowner to operate as an invitation by the landowner is if the nonlandowner is the landowner's actual agent under properly understood "agency principles." (*Id.* at p. 15.) But the majority also explicitly leaves open the possibility of other ways to make the showing that a nonlandowner's invitation operates as an invitation by the landowner. (*Id.* at p. 25, fn. 16.)

I agree with the majority on each of these points. But the last point, in particular, may benefit from further attention. While I agree that agency law — the theory upon which the parties have briefed this case to date — is indeed "one way" to show that a nonlandowner's invitation operates as an invitation "by the landowner," it is not one particularly well-suited to scenarios like the one we confront in this case: scenarios involving invitations by live-at-home members of the landowner's household. Agency principles do, of course, have their place in understanding section 846, subdivision (d)(3), just as they have long had a place in understanding the common law landowner duties that preceded and shaped it. (See, e.g., *Neil v. Feather River Lumber Co.*, *supra*, 203 Cal. at p. 504 [submitting to jury question whether managing agents of lumber corporation authorized or ratified a train conductor's conduct in inviting the plaintiff to ride on a train on a logging railroad, leading to the plaintiff's injury].) As applied to ordinary business relationships, agency law gives us a framework for concluding that, for example, a landowner should not escape liability for a

plaintiff's injury caused by a dangerous condition of the property simply because she has hired a party planner to send out invitations rather than posting the envelopes herself.  But as the majority notes, and I agree, agency law is an uneasy fit for the relationship between parent and child.  (See maj. opn., *ante*, at pp. 20–22; *Angus v. London* (1949) 92 Cal.App.2d 282, 285 ["The relationship of father and child, standing alone, does not prove the agency of either"].)  To employ the language of agency law in the context of filial relations raises questions to which traditional agency principles can supply no clear answers:  What does it mean to say a child is the "authorized agent" of his parent?  When can a child's invitation to a friend be said to have been made on "behalf" of a parent, who derives no personal gain from the invitation — aside, that is, from the gain that comes from the social benefits to her child?

There are, I think, other possible paths here.  As the majority explains, we generally read statutes in light of the common law principles in place at the time of their enactment.  (See maj. opn., *ante*, at p. 15; see, e.g., *McMillin Albany LLC v. Superior Court* (2018) 4 Cal.5th 241, 249; *Presbyterian Camp & Conference Centers, Inc. v. Superior Court* (2021) 12 Cal.5th 493, 504.)  Agency law is one such principle, but it is not the only one.  Under another principle, well settled by the time section 846 was enacted, invitations by legitimate occupants of property often *were* considered invitations "by the landowner."  Courts in the pre-*Rowland* period considered it clear, for example, that "generally, . . .  the landlord bears the relationship of an invitor to the invitees of his tenant."  (*Street v. Glorence Bldg. Co.*, *supra*, 176 Cal.App.2d at p. 196.)  We applied that rule in *Johnston v. De La Guerra Properties, Inc.* (1946) 28 Cal.2d 394, in which we explained that "invitees of the tenant are regarded

as being invitees of the owner while on passageways which invitees of the tenant have a right to use and which are under the owner's control." (*Id.* at p. 399.) In other words, for portions of shared property "used in common by all, the landlord owe[d] a duty to those visiting the premises . . . to visit a tenant or at his invitation," since such visitors "are invitees of both landlord and tenant." (*Spore v. Washington* (1929) 96 Cal.App. 345, 350; see, e.g., *Bellon v. Silver Gate Theatres, Inc.* (1935) 4 Cal.2d 1, 14 ["even if the invitation was made by [the tenant]," rather than the managing agent of the landlord, the landlord was "under a duty to use reasonable care in protecting the premises still under its control" when invitees of the tenant "might reasonably be expected to enter"]; see *id.* at p. 4.)[9] The rationale for treating invitations by the tenant as invitations by the landlord was that a landlord reasonably and ordinarily expects her tenants to invite visitors to their shared property, and should not be heard to complain about legal liabilities flowing from invitations she reasonably expects her tenants to issue in the ordinary course of social and economic life.

Essentially all the same things can be said about social invitations issued by children to their friends — which is, as the majority observes, an ordinary, accepted, and commonplace feature of our society. (Maj. opn., *ante*, at p. 21.) Rather than asking whether a child or other household member acts as a landowner's "authorized agent" when he invites a friend over to play — the sort of question we might ask if this were a corporate

---

[9] The typical scenario involved commercial landlords and commercial tenants, since before *Rowland* was decided in 1968, only "invitees" — most commonly, business visitors — were generally owed a duty of reasonable care in the first place.

merger or a real estate deal rather than an ordinary social visit — the common law background to section 846 suggests we might ask, more simply, whether the child was authorized to invite friends over.

A contrary reading of section 846 — one in which *only* invitations by a landowner or her agent, in the technical, business-oriented sense, suffice for the (d)(3) exception — would generate quite unusual results. The most obvious, and perhaps most troubling, would be that children ordinarily would be without any remedy for injury when friends invite them over to play. We should not lightly attribute that intent to the Legislature, particularly given California's "strong public policy to protect children of tender years" (*People v. Olsen* (1984) 36 Cal.3d 638, 646), and particularly when everything we know about the statute suggests it was directed to quite different concerns. By insisting on too exacting and technical a notion of what it means for a social guest to be invited "by the landowner," we would risk creating an expansive immunity the Legislature did not likely intend: one that could leave many children like Mikayla without a remedy if they are injured by dangers on the property when they visit a friend's house to play.

The oddities presumably would not stop there. Consider a large multigenerational family occupying property to which just one or two members of the family — say, a daughter and her spouse — formally hold title. The family hosts a backyard social gathering. Two guests — one invited by the daughter and one by a different member of the family — fall onto the same unreasonably dangerous lawn sprinkler while playing a recreational game of soccer, sustaining equally serious injuries. A narrow understanding of what it means for an invitation to be issued "by the landowner" could grant the daughter's guest the

right to sue for recreational injury, while the other, identically situated guest is left without a remedy — though no obvious reason appears for the difference. Or say a tenant invites guests to the common area of her apartment complex for a recreational swim. A guest is injured and sues the landlord for negligent maintenance of the swimming pool. The landlord did not personally invite the guest. Is the guest left without any remedy for her injury? (Cf. *Johnson v. Prasad* (2014) 224 Cal.App.4th 74, 76.) No other state high court has interpreted its state's analogous recreational immunity statute in this way,[10] and it seems unlikely our Legislature intended for section 846 to achieve these sorts of results.

## II.

Ultimately, I agree with the majority that definitive answers about the application of section 846 in this context must await further litigation. (See maj. opn., *ante*, at p. 12, fn. 12; *id.* at p. 25, fn. 16.) But in the meantime, the Legislature may wish to revisit the statute to clarify the limits of recreational use immunity. Section 846 was enacted against the backdrop of a set of common law rules that have not played any substantial role in California tort law for more than 50 years, and it continues to use language bound to confuse modern readers (and courts). As we have previously noted, "section 846 preserves" in recreational activity cases a set of long-vanished common law categories: the "distinction between trespassers, licensees and

---

**10** See *LePoidevin by Dye v. Wilson* (1983) 111 Wis.2d 116; *Loyer v. Buchholz* (1988) 38 Ohio St.3d 65; *Perrine v. Kennecott Mining Corp.* (Utah 1996) 911 P.2d 1290; *Brown v. Wilson* (1997) 252 Neb. 782; *Estate of Gordon-Couture v. Brown* (2005) 152 N.H. 265; *Bucki v. Hawkins* (R.I. 2007) 914 A.2d 491; *Crogan v. Pine Bluff Estates* (Vt. 2021) 257 A.3d 247.

invitees" that governed premises liability cases in California prior to *Rowland*. (*Delta Farms*, *supra*, 33 Cal.3d at p. 706.) But in *Rowland*, as the majority notes, "this court replaced the former concept of liability based on an entrant's status with the current application of liability based on ordinary principles of negligence under [Civil Code] section 1714." (Maj. opn., *ante*, at p. 9.) So long as section 846 remains written as it is — built, framed, and structured around a set of common law terms — the effect will be to require courts perpetually to refer back to a set of common law rules that neither comport with modern tort law nor the realities of modern social and family life. (See *Rowland*, *supra*, 69 Cal.2d at p. 118.) And for that reason, it will inevitably continue to generate confusion about whether household guests can seek compensation when they are injured because of dangerous conditions on the land they visit.

Although the Legislature has several times expanded the list of activities covered by the section 846, subdivision (a) immunity, it has not changed the basic structure of the statute — nor the basic list of three exceptions now contained in subdivision (d) — since 1963. This was a statute written for a different time, and the Legislature may wish to update it for ours.

**KRUGER, J.**

**We Concur:**

**LIU, J.**
**GROBAN, J.**

21

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Hoffmann v. Young

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 56 Cal.App.5th 1021
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S266003
**Date Filed:**  August 29, 2022

_____

**Court:**  Superior
**County:**  San Luis Obispo
**Judge:**  Linda D. Hurst

_____

**Counsel:**

Andrade Law Offices and Steven R. Andrade for Plaintiff and Appellant.

Horvitz & Levy, Dean A. Bochner, Joshua C. McDaniel, Christopher D. Hu; Henderson & Borgeson, Jay M. Borgeson and Royce J. Borgeson for Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Steven R. Andrade
Andrade Law Offices
211 Equestrian Avenue
Santa Barbara, CA 93101
(805) 962-4944

Christopher D. Hu
Horvitz & Levy LLP
505 Sansome Street, Suite 375
San Francisco, CA 94111-3175
(818) 995-5887